## UNITED STATES v. MOLONEY.
### No. 10543.

United States Court of Appeals,
Seventh Circuit.

Dec. 19, 1952.

Rehearing Denied Jan. 14, 1953.

Edward J. Bradley, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., and Irwin N. Cohen, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Appellant and Peter M. Foley, formerly Chicago policemen, were indicted jointly under a three-count indictment charging in Count 1 that on June 22, 1951, they deposited in the U. S. mails at Chicago, in violation of Title 18, U.S.C.A. § 876, a certain extortion letter addressed to Paul Panczko containing a threat to injure the latter's wife and daughter; charging in Count 2 that on June 25, 1951, they deposited in the mails a second extortion letter to the same addressee containing a threat of injury to his wife and daughter, in violation of the same section; and charging in Count 3 that beginning on June 22, 1951, and continuing through the following June 28, appellant and Foley conspired, in violation of Title 18, U.S.C.A. § 371, to commit the offenses charged in Counts 1 and 2, in connection therewith performing certain overt acts, as follows: (1) that on the dates and places mentioned in Counts 1 and 2, appellant and Foley performed the acts alleged in said counts; (2) that on June 22, 1951, appellant and Foley met and had a conversation concerning Panczko; and (3) that on June 25, 1951, appellant and Foley met and had a conversation concerning Panczko.

To all counts appellant pleaded not guilty. Foley on the other hand pleaded guilty to Counts 1 and 2 and not guilty to Count 3. A jury found appellant not guilty on Counts 1 and 2 and guilty on Count 3, and from judgment of conviction and sentence he prosecutes this appeal. Foley, found guilty and sentenced on all counts, did not appeal. Consequently, we are here concerned with the judgment and sentence imposed on appellant on Count 3.

On June 23, 1951, Mrs. Loretta Panczko, wife of Paul Panczko, took out of her residence mailbox a letter addressed to Mr. Panczko, postmarked June 22, 1951, reading:

"Pea-nuts

"If you like your child and wife you better have $5000:00 for us by Wed. or else.

"Put a chair in the middle of your back yard over the weekend and you will here from us Tues. Don't tell anyone or that is 'all.'

"Your house is being watch

Pal."

The child referred to in this letter is Mr. and Mrs. Panczko's four year old daughter. Panczko was well known by his nickname, Peanuts.

Mrs. Panczko showed the letter to her husband the same day. He in turn immediately called his lawyer and then contacted F.B.I. Agent Stefanak. Panczko was directed to and did follow the instructions of the letter with reference to placing a chair in his back yard.

On the following Tuesday, June 26, Mrs. Panczko received a further letter addressed to her husband, postmarked June 25. This letter read:

"Pea-nuts

"Now here is what you should do with the $5000.00 which should be in $100.00 $50.00 and $20.00. At about 1:30 A.M. Thursday morning drive north on Meade from Belmont and toss the bundle out at Newport on West side of Meade at lamp post

"I hope for your wife and kids sake you don't try to pull anything smart because-we-will have to take care of them-while your away if you-do-try any thing

"Pal

"Have the money well wraped in paper bag"

Enclosed with that letter was a newspaper picture of a man with a handkerchief to his eyes and across which was printed in pencil: "His kid was found dead. Don't let this be you, if anything happens!"

Promptly upon its receipt, this second letter and enclosure were turned over to Agent Stefanak, who in turn showed it to Panczko. At the time Panczko agreed with Agent Stefanak to drive his Cadillac as directed in the second letter and to toss out a decoy bundle, to be prepared and furnished by the F. B. I. at the time and place designated in the second letter.

On June 28, about 1:30 A.M., Panczko, driving his car and accompanied by Agents Stefanak and McCormick, sitting on the rear floor in a crouched position, reached the designated place. At that point he slowed down, tossed out the decoy bundle which had been furnished to him by the agents, and immediately drove away.

A number of F. B. I. agents, divided into groups of two and three, were stationed at various points in the vicinity of Meade and Newport Streets. One group of three agents was hidden in a closed light truck, parked in the parking area of Wright Junior College, in a place directly east and across the street from the designated lamppost.

About five minutes after Panczko tossed out the decoy bundle at the lamppost, a green Ford was driven northward on Meade. When opposite the decoy bundle, the Ford was stopped momentarily and then was driven north on Meade, turning to the left on the next cross street. Two adult males, both in the front seat, were in the Ford. The driver was seen to look directly at the decoy bundle near the lamppost during the momentary pause at Meade and Newport Streets.

After a lapse of a few minutes the Ford approached the intersection of Meade and Newport as it was driven east on Newport. It was stopped opposite the sidewalk at the intersection on the south side of Newport, being almost directly under the light of the lamppost. The passenger in the Ford was seen to look at the decoy bundle. The Ford remained parked at that point for half a minute, when, after turning the corner into Meade Street, it was driven south about two blocks, where it made a U-turn and proceeded north on Meade Street to the intersection with Newport, when it turned right into the parking area of Wright Junior College, stopping alongside of the light truck.

At that moment two men, admittedly appellant and Foley, got out of the Ford. As the windows of the truck were steamed up, Foley was unable to see who, if anyone, was inside. He then tried unsuccessfully

to open its rear door. Suddenly the door was thrown open, and appellant and Foley, each of them armed with a loaded revolver in hand, were surrounded by about twenty F. B. I. agents, coming from all directions. Appellant and Foley were disarmed and taken into custody. A search of the Ford, concededly owned by appellant, ensued. There was found in it a loaded automatic shotgun belonging to appellant, also his policeman's coat, hat and night stick. In his coat a notebook was found containing entries of several automobile license numbers, including, on the second page the entry: "1932861 (nuts)." A paper clip holding several small pieces of paper was found on the sun vizor facing the driver's seat of appellant's car, on one of which was written, "1932–861, Peanuts." Panczko's 1951 automobile license number was 1932861.

It was observed that the rear license plate of the Ford was removed and found in the trunk, and that the top corners of the front license plate had been bent over so that the number could not be read.

The search and examination of the Ford completed, appellant and Foley were taken in separate automobiles to the F. B. I. offices in downtown Chicago. They were questioned off and on during the remainder of the night. Foley admitted that he, without the participation of anyone else, conceived, wrote and mailed the two extortion letters. On this point, appellant stated that he was first informed by F. B. I. agents during the course of their questioning of him during the early morning hours of June 28, 1951, at the F. B. I. offices, that the extortion letters existed and had been written and mailed. In written statements that were given by both appellant and Foley to the F. B. I. and to the Chicago Police Department, as well as in their testimony on the trial, they consistently maintained such position. According to this evidence, appellant's first knowledge of the existence and mailing of the extortion letters came to him six days after Foley mailed the first extortion letter and three days after Foley mailed the second extortion letter.

Appellant took the stand and gave an explanation of his actions and conduct on the night in question, claiming that Foley had solicited his help in apprehending Panczko, a well-known police character with a reputation as a burglar, in possession of stolen goods, and thus possibly collect a sizeable reward. Panczko lived in the vicinity where appellant and Foley were apprehended. However, we shall not repeat the details of his story, as we must here consider only the evidence most favorable to the government. United States v. Levi, 7 Cir., 177 F.2d 827, 832; United States v. Yeoman-Henderson, Inc., 7 Cir., 193 F.2d 867, 869.

We are confronted with a somewhat unusual situation. Appellant was found guilty only of conspiracy. Three overt acts were charged. The government made no attempt to prove overt acts Nos. 2 and 3, and there is no testimony in the record to support same. Overt act No. 1 charged that appellant and Foley performed the acts alleged in Counts 1 and 2. The trial court instructed the jury that if appellant aided or abetted in the crimes charged in Counts 1 and 2, he should be found guilty as a principal; yet the jury, by finding the appellant not guilty on Counts 1 and 2, concluded that appellant neither posted the extortion letters nor aided or abetted Foley in so doing. We recognize that the general rule is that the verdict of a jury need not be consistent as between different counts, United States v. Bazzell, 7 Cir., 187 F.2d 878, 884, yet the situation at bar is closely analagous to that which gave this court considerable concern in United States v. Rosenblum, 176 F.2d 321. There Chief Judge Major stated, in 176 F.2d at page 330: "Any difference between concerted action to commit an act and participation in a joint enterprise to commit the same act is not discernible to me."

Count 1 charged that appellant and Foley deposited an extortion letter in the United States mails on June 22, 1951; Count 2 charged that they deposited a second extortion letter in the United States mails on June 25, 1951. Thus the conspiracy charged was that they unlawfully schemed,

planned, confederated and combined together to deposit in the United States mails two extortion letters, one on June 22 and one on June 25, 1951. Hence, if they conspired, the conspiracy was complete on June 25 at the time the second letter was deposited in the United States mails.

Foley, in his statements before the trial, and in his testimony at the trial, stoutly denied that appellant had any knowledge whatsoever that he had prepared and deposited the extortion letters. Under a practice apparently quite generally understood, a lighter sentence is usually imposed if the government is not put to the trouble and expense of a trial, as a result of a plea of guilty. Foley had much to lose and little to gain by forcing the government to go to trial on the third count against him, after having pleaded guilty on Counts 1 and 2. Appellant likewise at all times insisted he did not know anything about the extortion letters and first heard of them when questioned by F. B. I. agents after his arrest.

It should be kept in mind that the only basis for a prosecution of Foley and appellant in a federal court was to charge a violation of Title 18, Sec. 876, U.S.C.A., namely, the depositing in the United States mails of a communication, to be delivered by the Post Office Department, containing a threat to injure the person of the addressee or another. In United States v. Strewl, 2 Cir., 99 F.2d 474, certiorari denied 306 U.S. 638, 59 S.Ct. 489, 83 L.Ed. 1039, construing Title 18, Sec. 876, U.S. C.A., it was held the crime was complete when the letters were posted. The only crimes charged in Counts 1 and 2 of the indictment herein were posting the extortion letters.

■ There is no relevant evidence from which an inference can be drawn that prior to the time when the letters were posted appellant and Foley were engaged in a conspiracy to post such letters. True, they were on friendly terms, and over a period of several weeks prior to the posting of the letters, appellant had assisted Foley in the painting of a house. But mere casual association is not proof of participation in a conspiracy. "Presumptions of guilt are not lightly to be indulged from mere meetings." United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 228, 92 L.Ed. 210.

■ The only testimony upon which the jury could have relied in order to find appellant guilty of conspiracy was that showing the circumstances and the actions of appellant and Foley on the early morning of June 28, 1951, nearly three days after the second letter had been posted, and after the conspiracy charged herein had terminated. In United States v. Rosenblum, supra, 176 F.2d at page 331, this court said: "Such being the situation, the admissions, statements and acts of the individual defendants made or performed after the termination of the conspiracy were not admissible and cannot be considered as proof of that charge. Fiswick, et al. v. United States, 329 U.S. 211, 215–217, 67 S.Ct. 224, 91 L.Ed. 196. * * *"

In the Fiswick case, the Supreme Court said, 329 U.S. at page 217, 67 S.Ct. at page 227: "While the act of one partner in crime is admissible against the others where it is in furtherance of the criminal undertaking, Pinkerton v. United States, 328 U. S. 640, 646–647, 66 S.Ct. 1180, 90 L.Ed. 1489, and cases cited, all such responsibility is at an end when the conspiracy ends. Logan v. United States, 144 U.S. 263, 309, 12 S.Ct. 617, 632, 36 L.Ed. 429; Brown v. United States, 150 U.S. 93, 98, 14 S.Ct. 37, 39, 37 L.Ed. 1010." See also: Krulewitch v. United States, 336 U.S. 440, 443–444, 69 S.Ct. 716, 93 L.Ed. 790. While any declarations made by appellant after the termination of the conspiracy might be used as an admission against interest, in the case at bar, as pointed out previously, appellant at all times vigorously asserted that he knew nothing of the extortion letters until after his arrest. There is nothing in any statement made by appellant, or in his testimony at the trial, that is proof of the existence of the conspiracy charged.

■ We conclude there was no sufficient relevant evidence against appellant to sustain the charge of conspiracy. The district court erred in failing to grant his motion for a directed verdict. The judgment of conviction will be reversed, and the action

remanded with directions to the district court to enter judgment of acquittal as to appellant on the third count of the indictment.

Reversed.