UNITED STATES of America,
Plaintiff-Appellee,

v.

Albert ISAKSSON, Defendant-Appellant.

No. 84–1004.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1984.

Decided Sept. 17, 1984.

Robert E. Meldman, Meldman, Case & Weine, Ltd., Milwaukee, Wis., for defendant-appellant.

Thomas D. Sykes, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

Defendant Albert Isaksson appeals from his convictions of Counts 10 and 11 of an indictment for aiding and assisting in the preparation of 1978 and 1979 false income tax returns in violation of 26 U.S.C. § 7206(2), and his conviction of Count 1 for conspiring to commit the above substantive offense in violation of 18 U.S.C. § 371. Defendant argues that the government introduced insufficient evidence to establish that income was under-reported on the two returns in issue, and that the conspiracy conviction is inconsistent with the jury finding of acquittal on Counts 4 and 5 also alleging violations of 26 U.S.C. § 7206(2).[1] For the reasons provided herein we reject defendant's arguments and affirm defendant's convictions under Counts 1, 10 and 11.

---

1. The district judge granted defendant's motion for acquittal as to parallel Counts 2, 3, 6, 7, 8, 9 and 12. See text and n. 3 *infra*.

## I

Defendant Albert Isaksson and his brother owned and operated the Isaksson Lumber Company of Herbster, Wisconsin (the "Company"). The Company consisted of a retail lumber outlet, a sawmill, and a pulpwood and logs division, *i.e.*, tree-cutting operations. As the testimony at the jury trial indicated, during the late 1970's employees of the Company participated in a scheme designed to reduce the amount of tax paid by both the employees and the Company. Participating employees were paid partially or completely for their services with a check charged against the pulpwood and logs account on the Company's books, the remainder being charged against the wages account. Only from the checks for payment of wages charged to the wages account were amounts withheld by the Company for federal income tax, state income tax, and for withholding under the Federal Insurance Contributions Act (FICA). From the checks for payment of wages charged against the pulpwood and logs account, no amounts were withheld for these purposes, nor was the payment of wages represented by these checks reported on the W–2 forms provided to the employees and filed with the Internal Revenue Service by the Company. The several employees who allegedly participated in the scheme are said to have used these W–2 forms in the preparation of their understated federal income tax returns for the years 1977, 1978, and 1979.

Another facet of the scheme designed to reduce an employee's overall income tax liability involved making a portion of the employee's wages payable from the pulpwood and logs account to a non-existent person or a relative of the employee, usually a child, who was not employed by the Company. For example, the government at trial introduced records of numerous checks, signed by defendant, that were made payable to Kenneth and Douglas Belanger, minor sons of employee Louis Belanger.

On April 13, 1983, a twelve-count indictment was filed against defendant Albert Isaksson.[2] Counts 2 through 12 charged him with aiding and assisting each of seven named individuals in the preparation of a federal income tax return that was false as to a material matter in contravention of 26 U.S.C. § 7206(2). Count 1 charged him with conspiring to defraud the federal government by aiding and assisting in the preparation of the false returns through understated W–2 forms in violation of 18 U.S.C. § 371. The case was tried before a jury, the government's principal witnesses being employees Louis Belanger and bookkeeper Carla Collins, who both testified as to the scheme. After all evidence was introduced, defendant's counsel moved for judgment of acquittal on all counts. The court ruled that the government in making its prima facie case had not introduced evidence that five of the seven individuals named in Counts 2 through 12 were employees as opposed to independent contractors.[3] The distinction is critical in this case because payments made to independent contractors are not considered wages and therefore are not subject to withholding, nor must they be reported on form W–2. See 26 U.S.C. § 3121(d)(3) *infra*. Judge Crabb granted the motion on Counts 2, 3, 6, 7, 8, 9, and 12, and denied the motion with respect to Counts 4, 5, 10, and 11. Counts 4 and 5 relate to the W–2 forms and income tax returns of Carla Collins for 1978 and 1979, respectively; Counts 10 and 11 relate to the W–2 forms and income tax returns of Louis Belanger for the same years.

The jury found defendant not guilty of Counts 4 and 5 as to Carla Collins, but

**2.** Defendant's wife Gloria, who was the principal bookkeeper for the Company, was also indicted; the charges against her subsequently were dismissed at the government's request on account of her severe illness.

**3.** Counts 2, 3 and 12 covered Kevin Carlson, Count 6 covered Dennis Hipsher, Count 7 covered Scott Hipsher, Count 8 covered Larry Badura and Count 9 covered Gregory Belanger. Counts 4 and 5 covered Carla Collins and Counts 11 and 12 covered Louis Belanger. Only the latter four substantive counts plus conspiracy Count 1 went to the jury. See Tr. for July 21, 1983.

guilty of Counts 10 and 11 as to Louis Belanger, and guilty of conspiracy Count 1 as to Belanger. Defendant was sentenced to 30 days' imprisonment and $10,000 fine under Count 1, 30 days' concurrent imprisonment and $5,000 fine under Count 10, and three years' probation under Count 11.

## II

Defendant's first contention on appeal is that the government did not adduce sufficient evidence under Counts 1, 10 and 11 for a jury to find beyond a reasonable doubt that Louis Belanger's federal income tax returns understated wages. Defendant argues that Louis Belanger's work outside the sawmill, *i.e.*, as a cutter, slasher,[4] skidder, and truck driver, was independent contractor work as opposed to work as an employee of the Company. According to defendant, Belanger inadvertently withdrew payments for his services as an independent contractor from the wages account rather than the pulpwood and logs account during the years in question. Defendant claims an overstatement of wages resulted which offsets the understatement attributable to the use of the pulpwood and logs account for wages, *i.e.*, sawmill work. Defendant also contends that even if defendant cannot establish that this offset did in fact occur, the government bears the burden of proof to show it did not occur, and failed to meet this burden.

This Court must address two preliminary matters which call into question defendant's framing of the issues. First, defendant assumes that if Louis Belanger did in fact take independent contractor pay from the wages account in the amount of underreporting, then defendant did not violate 26 U.S.C. § 7206(2)[5] because the returns would not be false as to a material matter. However, this position overlooks the fact that if the offset did occur, it did so only by virtue of the inadvertent conduct of nondefendant Belanger, which does not mitigate defendant's willful assistance in evading

the federal tax laws. As the testimony at trial established, whether Belanger drew a particular payment on the wages account or the pulpwood and logs account was a matter within Belanger's discretion, this practice being allowed by defendant. Moreover, the source of one's income is a material matter, the false statement of which can be prosecuted under Section 7206. *United States v. DiVarco*, 343 F.Supp. 101 (N.D.Ill.1972). Therefore Isaksson's purported defense, if established, would not negate the evidence that he willfully aided in the fraudulent scheme.

The second preliminary matter is whether, as defendant assumes, Belanger's work outside the sawmill *i.e.*, the cutting, skidding, slashing, and truck driving, is characterizable as independent contractor work. 26 U.S.C. § 3121(d)(3) defines employee for employment tax purposes as one who:

> [P]erforms services for remuneration for any person * * * if the contract of service contemplates that substantially all of such services are to be performed personally by such individual; except that an individual shall not be included in the term "employee" under the provisions of this paragraph if such individual has a substantial investment in facilities used in connection with the performance of such services (other than in facilities for transportation), or if the services are in the nature of a single transaction not part of a continuing relationship with the person for whom the services are performed.

Under this test it is a plausible conclusion that Belanger's work as a tree cutter, slasher, skidder, and hauler was derived from an employment relationship with the Company rather than from an independent contractor arrangement. As Belanger testified, the Company owned the cutting, skidding, slashing, and hauling equipment (although he did own and use his own chain saw). Albert Isaksson selected the areas

---

**4.** A device containing a loader and a saw which cuts logs into eight-foot lengths.

**5.** Section 7206(2) makes it a felony to aid or assist willfully in the preparation of a materially false or fraudulent tax return.

for the tree-cutting operations and purchased the timber from the land owners. Unlike many of the other loggers, Belanger also worked in the sawmill on the Company's premises; moreover, his logging services provided during the years in question can be said under 26 U.S.C. § 3121(d)(3) to be "part of a continuing relationship with the person for whom the services are performed," *i.e.,* Isaksson. See Rev.Rul. 71–273, 1971–1 C.B. 286 (logging company that retains right to control and direct skidders' services and manner of performance employs skidders). Compare *Jones v. United States,* 43 A.F.T.R.2d (P–H) 79,521 (E.D. Tex.1978) (tree cutter was independent contractor where cutter provided his own tools and equipment and bore both the opportunity for profit and risk of loss), reversed and remanded on other grounds, 613 F.2d 1311 (5th Cir.1980).

There exist other factors that could lead to a contrary conclusion. Belanger testified that when working on the skidder he could select the days and times he would work, although the record does not indicate whether the Company needed advance notice of Belanger's schedule. He had no quota but was paid in essence on commission, and only after the wood was sold to a customer. And it is certainly a reasonable conclusion that an individual may be both an employee and an independent contractor in his relationship to the same company. Cf. *Pulver v. Commissioner,* 44 T.C.M. (CCH) 644, 648–650 (1982).

We need not decide these preliminary issues; rather, we accept (without deciding) defendant's view so that we may press on and decide the central issue of whether on the evidence adduced at trial a rational jury could conclude beyond a reasonable doubt that Belanger's income tax returns understated wages. Belanger testified plainly and without contradiction that he received checks for sawmill work drawn against the pulpwood and logs account during 1978 and 1979. Defendant does not contend that insufficient evidence was presented to establish that he willfully aided and assisted Belanger in this fraudulent practice; therefore the only possible defense is that Belan-

ger inadvertently withdrew sufficient pay from the wage account for independent contractor work to offset the amount fraudulently under-reported.

Defendant is correct in that the Company's records do not provide concrete, documentary evidence that Belanger unwittingly negated the fruits of the fraudulent practice. Company records specify the date, amount, and payee of each check and whether the check was drawn against the wages or pulpwood and logs account. Yet the Company made available virtually no records in regard to whether the services performed for each payment were for services in the sawmill or for tree cutting and related services.

Nonetheless, reviewing the evidence in the light most favorable to the government, *United States v. Beck,* 615 F.2d 441, 448 (7th Cir.1980), the government proffered sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Belanger's income tax returns understated wages. At trial he could not recall a specific instance of drawing checks from the wages account for his services as a slasher, which comprised a substantial portion of his purported independent contractor services (Belanger, test., p. 12). Nor did he testify that he ever asked for or received wages checks for other work he performed as an independent contractor.

Moreover, what documentary evidence of Belanger's work activities was discovered indicated that he did not draw his independent contractor pay from the wages account. Nine "work reports" for independent contractor services during September through November 1977 indicated the number of the check remitted to Belanger for the work. All nine of these checks were drawn against the pulpwood and logs account, not the wages account.

Further, as the district court observed in denying defendant's post-verdict motion for judgment of acquittal, "It is illogical to think that any individual entitled to payment without deductions would have asked for, or accepted, a check drawn on the

'Wages' account * * *." This inference is compelling despite the apparent lack of sophistication on the part of Belanger. Finally, defendant has failed to refute the evidence that substantial payments were made from the pulpwood and logs account, and only from this account, to Belanger's sons Kenneth and Douglas, who were not employed by the Company in any capacity.

 The government need not establish the exact amount of understated income in order to establish tax evasion. See *United States v. Marcus*, 401 F.2d 563, 565 (2d Cir.1968) certiorari denied, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567; *Clark v. United States*, 211 F.2d 100, 103 (8th Cir.1954). In sum, the evidence viewed in the light most favorable to the government was sufficient to permit a reasonable jury to find beyond a reasonable doubt that Belanger's income tax returns for 1978 and 1979 understated wages.

### III

The second principal issue raised by defendant is whether the conspiracy conviction (18 U.S.C. § 371) can be sustained on the basis of overt acts 4 and 5 contained in Count 1 of the indictment and the jury finding in regard to these overt acts. After amendment and deletions by the district court, the two pertinent overt acts state essentially [6] that in January 1979 and January 1980, defendant authorized W–2 forms falsely understating wages, prepared by bookkeeper Carla Collins and given to Louis Belanger and Carla Collins. These alleged overt acts are the same overt acts alleged in Counts 4 and 5 and 10 and 11 of willful assistance of Collins and Belanger

respectively in the preparation and filing of their 1978 and 1979 false tax returns based on the understated W–2 forms (26 U.S.C. § 7206(2)). As noted earlier, the jury convicted defendant of willfully assisting Belanger in the preparation and filing of false returns for the years 1978 and 1979 (Counts 10 and 11), and acquitted defendant of willfully assisting Carla Collins in similar fashion (Counts 4 and 5).

 This Court has held that in prosecutions involving aiding and abetting as well as conspiracy, the government is required to prove an overt act designed to aid in the commission of the offense. See, *e.g.*, *United States v. Beck*, 615 F.2d 441, 449 (7th Cir.1980). To the jury's satisfaction the government proved Count 1 overt acts 4 and 5 of providing false form W–2 assistance to Louis Belanger; consequently, without more, the conspiracy conviction is sustainable, for the "government [is] not required to prove all overt acts charged: proof of one can suffice." *United States v. Cassell*, 452 F.2d 533, 536 (7th Cir.1971); see also *Robinson v. United States*, 210 F.2d 29, 32 (D.C.Cir.1954).

Even if the acquittal of Counts 4 and 5 relating to the assisting of Carla Collins is construed to be inconsistent with the Counts 10 and 11 convictions of assisting Louis Belanger in the preparation and filing of false returns, such a conclusion does not, as defendant contends, mandate reversal of his convictions of either the underlying offense (Counts 10 and 11) or the conspiracy offense (Count 1). Appellate courts should seek to reconcile verdicts to avoid if possible a finding of inconsistency, see *Stone v. City of Chicago*, 738 F.2d 896

---

**6.** The exact text is as follows:

[One], during January, 1979, W–2 forms falsely understating the amount of wages received by the following employees during 1978 from the company were with the authorization of the defendants, Albert Isaksson and Gloria Isaksson, prepared by Carla Collins and given to those employees and filed with the Internal Revenue Service. Those employees being Louis Belanger and Carla Collins. Two, during January of 1980 W–2 forms falsely understating the amount of wages from the company were with the authorization of the defend-

ants, Albert Isaksson and Gloria Isaksson, prepared by Carla Collins and given to the employees and filed with the Internal Revenue Service. The employees being Louis Belanger and Carla Collins.

Jury Instructions, p. 11. These instructions copy Count 1 overt acts 4 and 5 except that the instructions refer only to Louis Belanger (Counts 10 and 11) and Carla Collins (Counts 4 and 5) because they were the only "employees" left in the case after the trial judge acquitted defendant under Counts 2, 3, 6, 7, 8, 9 and 12.

at 900–901 (7th Cir. July 20, 1984), and here the substantial evidence in the record linking defendant with Collins as well as Belanger in the fraudulent scheme creates an apparent inconsistency in view of defendant's acquittal of Collins Counts 4 and 5. Nonetheless, as the Supreme Court held in *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." Accord: *Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590. The policy consideration underlying this rule is that a jury may acquit on some counts and convict on others not because they are unconvinced of guilt, but because of compassion or compromise. *United States v. Beck*, 615 F.2d 441, 448 (7th Cir. 1980); *United States v. Blasco*, 581 F.2d 681, 685 n. 9 (7th Cir.1978), certiorari denied, 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425; *United States v. Reicin*, 497 F.2d 563, 567 (7th Cir.1974), certiorari denied, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269. Further, as distinguished Professor Rollin Perkins has observed, where the jury acts out of lenity or similar motives in acquitting on some counts, it is unlikely that the jury intended the partial acquittal to prompt a reversal of the convictions on appeal. See R. Perkins, *Dealing With The Inconsistent Verdict*, 15 Crim.L.Bull. 405 (1979).

Defendant in effect urges this Court to carve out an exception to this rule where a conspiracy is alleged in addition to underlying substantive offenses. We decline to do so. While a conspiracy count and its relationship to the underlying offenses may present an added complexity to the jury, this complexity is not so great as to create a presumption that it is beyond the comprehension of a lay jury. On the basis of this record there is no perceptible confusion in the presentation of evidence or jury instructions to warrant a contrary conclusion.

Although our research discloses no recent Seventh Circuit decisions directly on point, the applicability of the inconsistent verdict rule to the instant scenario was noted in *Worthington v. United States*, 1 F.2d 154 (7th Cir.1924). There the conspiratorial overt acts specifically alleged were also the acts upon which the underlying offenses were predicated. The jury found defendant guilty of conspiracy and of one of the three substantive counts. We held that no ground for reversal existed as long as there was sufficient evidence to support the convictions, and that "[t]he apparent inconsistency of the verdict does not show, as claimed, confusion in the minds of the jury as to either the issues or proof." 1 F.2d at 155. In *Worthington* the Court remarked that the jury may have acquitted out of leniency for the defendant in that "it was sufficient to find defendant guilty upon the first two counts." *Id.* This rationale may have been operative in the instant case, or perhaps the jury simply did not find Carla Collins to be culpable in her own right as to Counts 4 and 5. Whatever the reason, an appellate court is not free to speculate. What is certain is that the jury intended to convict and did convict defendant on Counts 1, 10 and 11; to reverse solely on the basis of the acquittal on Counts 4 and 5 without some evidence of jury confusion would amount to an unwarranted intrusion into the province of the jury.

Defendant contends that *United States v. Moloney*, 200 F.2d 344 (7th Cir.1952), dictates a contrary result. There defendant was charged with two counts of the use of interstate mail facilities with intent to extort (18 U.S.C. § 876) and conspiracy to commit extortion (18 U.S.C. § 371). The overt acts alleged in the conspiracy count were the acts comprising the alleged underlying offenses, along with two other overt acts that the government never attempted to prove at trial. The jury acquitted defendant on both substantive offenses but convicted on the conspiracy offense. Defendant challenged the conviction on appeal, and this Court reversed the conviction. *Moloney*, however, is distinguishable because the government introduced insufficient evidence to sustain the conspiracy conviction, 200 F.2d at 347. In the instant case there is ample evidence to sustain

both the conspiracy conviction (Count 1) and the conviction for willfully aiding Louis Belanger in the preparation and filing of false income tax returns (Counts 10 and 11). Moreover, although not stated as the basis for the decision in *Maloney*, there the jury had acquitted defendant on all counts of the underlying offense; where this occurs, some courts have held that "a jury's acquittal on substantive counts operates as an acquittal on the underlying conspiracy count where the acquittal on the substantive counts constitutes a determination that no overt act in support of the conspiracy took place." *United States v. Morales*, 677 F.2d 1, 3 (1st Cir.1982); see also *Herman v. United States*, 289 F.2d 362, 368 (5th Cir.1961). In the trial below the jury convicted defendant on two counts (10 and 11) of willfully aiding the filing of false returns by Louis Belanger, these same acts constituting overt acts 4 and 5 specifically alleged as a basis of the Count 1 conspiracy. Therefore the narrow exception to the inconsistent verdict rule prescribed by *Morales*, even if it were to be accepted by this Court, is inapposite.

## IV

For the aforesaid reasons, the convictions of defendant are affirmed.[7]

---

7. Defendant's other contentions merit no discussion.