UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul R. THOMPSON,
Defendant-Appellant.

No. 85–3153.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1986.

Decided Dec. 11, 1986.

Larry A. Mackey, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., U.S. Atty.'s Office, Springfield, Ill., for plaintiff-appellee.

Before COFFEY and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

COFFEY, Circuit Judge.

Paul R. Thompson appeals his conviction for ten counts of excise tax evasion under 26 U.S.C. § 7201 (1982). We affirm.

## I

The indictment in this case charged that Paul Thompson evaded more than $38,000 in federal excise taxes owed for diesel fuel sales made over a period of ten consecutive fiscal quarters beginning in May, 1979 and ending September 30, 1981 in violation of 26 U.S.C. § 7201.[1] Thompson owned and operated both the Auburn Oil Company as well as the Thompson Oil Company. The Auburn Oil Company operated a truck stop located near an interstate highway in Springfield, Illinois, known as the Big Chief Truck Plaza. The Thompson Oil Company made diesel fuel purchases from the Clark Oil Company and resold that fuel to the Auburn Oil Company for subsequent resale at the Big Chief Truck Plaza. During this period of time (May, 1979 through September, 1981) the federal government was imposing a four cent per gallon excise tax on all fuel sold for use in diesel powered highway vehicles.[2]

Steven J. Rosenberg, Steven J. Rosenberg, S.C., Chicago, Ill., for defendant-appellant.

1. 26 U.S.C. § 7201 (1982) states:
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

2. Thompson evaded a diesel fuel excise tax imposed pursuant to 26 U.S.C. § 4041 which states in pertinent part:
   (a) Diesel fuel. There is hereby imposed a tax of 4 cents a gallon upon any liquid (other than any product taxable under section 4081)—

   (1) sold by any person to an owner, lessee, or other operator of a diesel-powered highway vehicle, for use as a fuel in such vehicle; or
   (2) used by any person as a fuel in a diesel-powered highway vehicle unless there was a taxable sale of such liquid under paragraph (1).
   \*   \*   \*   \*   \*   \*
   (f) Exemption for farm use.
   (1) Exemption. Under regulations prescribed by the Secretary, no tax shall be imposed under this section on any liquid sold for use or used on a farm for farming purposes.
   \*   \*   \*   \*   \*   \*
   (g) Other exemptions. Under regulations prescribed by the Secretary, no tax shall be imposed under this section—

Retail sellers of diesel fuel had the responsibility of collecting the tax. Retailers could shift the responsibility for the collection of the tax to their suppliers by having the diesel fuel suppliers include the tax in their purchase price. Federal law further required that an excise tax return be filed with the Internal Revenue Service for each fiscal quarter in which a person made sales of taxable diesel fuel.

Evidence presented at trial revealed that Thompson used his Thompson Oil Company to make diesel fuel purchases from the Clark Oil Company without having Clark charge the excise tax in its sale price to its purchasers. Thompson had the Thompson Oil Company resell the fuel with the tax included in the price to his Auburn Oil Company for eventual retail sale at the Big Chief Truck Plaza. The government contended at trial that the defendant Thompson pocketed the excise tax money included in the Thompson Oil Company's price of diesel fuel sold to Auburn Oil. On the other hand, Thompson maintained that he used the Thompson Oil Company to make purchases for Auburn Oil because Thompson Oil had a long-standing credit relationship with the Clark Oil Company and further contended that he thought that Clark was including an amount for the federal excise tax in its sales price. Thompson produced a copy of a handwritten speed memo directing Clark Oil to include all state and federal taxes in its sales price to Thompson Oil, but a search by a representative of the Clark Oil Company of the Clark Oil Company records revealed that Clark received a memo from Thompson requesting that only state taxes be included in the price of the fuel.

Thompson, through his Auburn Oil company, also purchased diesel fuel for retail sale at the Big Chief Truck Plaza from the Ben-Al Oil Company. Ben Jones, the owner of the Ben-Al Oil Company, testified at trial that Thompson instructed him not to include the amount of the federal excise tax in his price for diesel fuel sold to Auburn Oil for resale at the Big Chief Truck Plaza. Thompson, on the other hand, contended that he was unaware of Ben-Al's failure to include the tax in the sales price and requested that it be included once the fact came to his attention. At trial Jones also testified that Thompson gave him a number to place on Ben-Al's invoices and stated that this number authorized Thompson to make "tax free" purchases for the Big Chief Truck Plaza. In reality, the number was unrelated to the collection of federal excise taxes since it was the Thompson Oil Company's federal employer identification number. The number appeared on Ben-Al's original invoices but was missing or otherwise illegible on the customer copies of the invoices. Because Thompson purchased diesel fuel from the Ben-Al Company without having Jones withhold the excise tax and then resold it to retail customers at the Big Chief Truck Plaza, he became liable for the tax.

The four cent excise tax on the 956,212 gallons of diesel fuel purchased by Thompson from Clark and Ben-Al and resold at the Big Chief Truck Plaza from 1979 to 1981 amounted to $38,248.48. The pump price paid for diesel fuel at the Big Chief Truck Plaza included the excise tax. Further the record reflects that the defendant failed to pay the excise tax collected to the Internal Revenue Service. Thompson's claim at trial was that he made many sales of diesel fuel to tax exempt customers such as farmers who were exempt from paying the excise tax. At trial Thompson failed to produce any records to support his conten-

(1) on any liquid sold for use or used as supplies for vessels or aircraft (within the meaning of section 4221(d)(3));

(2) with respect to the sale of any liquid for the exclusive use of any State, any political subdivision of a State, or the District of Columbia, or with respect to the use by any of the foregoing of any liquid as a fuel;

(3) upon the sale of any liquid for export, or for shipment to a possession of the United States, and in due course so exported or shipped; and

(4) with respect to the sale of any liquid to a nonprofit educational organization for its exclusive use, or with respect to the use by a nonprofit educational organization of any liquid as a fuel.

tion that he made extensive tax exempt sales. In fact, on cross-examination Thompson admitted that according to his own estimate only 10 to 15 percent of the sales of diesel fuel at the Big Chief Truck Plaza were tax exempt.

## II

Prior to trial, Thompson made a motion in limine to exclude any evidence at trial of his prior convictions for tax evasion. The trial court denied Thompson's motion in limine ruling that his prior state tax fraud convictions were admissible under Federal Rule of Evidence 609. The Court held that Thompson's prior convictions were admissible as conforming to the requirements of Rule 609 as they were crimes involving dishonesty and his trial would commence within less than 10 years of his release from confinement for his state tax fraud convictions. Thompson had pled guilty to thirty charges of violating the Illinois state tax laws on August 22, 1975 in Sangamon County Circuit Court. The thirty convictions stemmed from Thompson's filing of false Illinois sales tax returns, false Illinois motor fuel tax returns, and a false Illinois corporate income tax return. After the trial court denied the motion in limine, counsel for Thompson requested that the court inquire on voir dire examination of potential jury members whether any panel members would be prejudiced against Thompson because of his prior convictions. The court complied with Thompson's request that it inquire on voir dire examination whether any potential jury members would be prejudiced against Thompson due to his prior convictions.

## III

Initially, Thompson contends that his tax evasion conviction should be reversed because the government failed to prove that he owed taxes on all his sales of diesel fuel. Specifically, Thompson seems to maintain that the government did not meet its burden of proof because it failed to prove the specific amount of excise tax owed by Thompson. Thompson contends that the government cannot "prove that a defendant has evaded a *specific* amount of tax in a *specific* quarter by simply multiplying the number of gallons sold by the amount of excise tax applicable." In *Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), the United States Supreme Court stated that "the elements of § 7201 are willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." *Id.* at 351, 85 S.Ct. at 1010 (citations omitted). *See also United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984); *United States v. Callahan,* 588 F.2d 1078, 1081 (5th Cir.1979); *United States v. Voorhies,* 658 F.2d 710, 713 (9th Cir.1981). On appeal, Thompson argues that the government failed to prove the existence of a tax deficiency.

The indictment charged that for ten successive quarters in 1979, 1980 and 1981, Thompson attempted to evade a total of $38,248.48 in federal excise taxes. While the indictment did allege that a specific amount of tax was due and owing for each of the ten quarters, the government did not and is not required to prove the specific dollar amount of tax due for each of the ten quarters. In a prosecution under 26 U.S.C. § 7201, the government "must prove 'every element of the offense beyond a reasonable doubt though not to a mathematical certainty.'" *United States v. Gardner,* 611 F.2d 770, 775 (9th Cir.1980), *quoting Holland v. United States,* 348 U.S. 121, 138, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). In *Olender v. United States,* 237 F.2d 859 (9th Cir.1956) the court stated:

"We affirm that the government must establish *some* deficiency for each of the years. Otherwise, there could be no violation. However, it seems equally plain that it is not incumbent upon the government to prove the amount of the deficiency with mathematical exactitude for each year in a prosecution involving consecutive years. A contrary rule would enable the guilty to say, 'Yes, I am guilty, but since you cannot allocate the deficiencies to each particular year with exactness,

although there was some deficiency in each year, I must go free.' We reject the idea that surreptitious dealings which inhibit the prosecution's ability to make a precise allocation for each year can furnish a cloak of immunity to tax evaders." 237 F.2d at 867 (emphasis in original). In an income tax case, *United States v. Isaksson,* 744 F.2d 574, 578 (7th Cir.1984), this court said "[t]he government need not establish the exact amount of understated income in order to establish tax evasion." *Id.* at 578. In *United States v. Stein,* 437 F.2d 775, 779 (7th Cir.1971), we stated "[t]here is no requirement that the government establish the exact amount of unreported income, as proof of a substantial sum will suffice." *Id.* at 779. The government argues that since it proved that Thompson made substantial retail sales of diesel fuel without paying the federal excise tax, it met its burden of proof that Thompson had a tax liability and thus was guilty of tax evasion under 26 U.S.C. § 7201.

■ We must examine whether the government proved that Thompson had a tax liability in each of the ten quarters as charged in the indictment. In doing so, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). On appeal Thompson contends that because he had made numerous undocumented tax exempt sales of diesel fuel the government could not prove with certainty that he owed a specific amount of federal excise tax for diesel fuel sales for each of the ten successive quarters during 1979–1981, as charged in the indictment. At trial Agent Bernie Coleman of the Internal Revenue Service testified that Thompson sold 956,212 gallons of diesel fuel over the ten quarter period as charged in the indictment without paying the required excise tax totalling $38,248.48. Agent Coleman, testifying as a government

witness, used invoices from the Big Chief Truck Plaza detailing Thompson's average daily sales of fuel. In this manner Coleman was able to calculate the amount of tax Thompson owed in each of the ten successive quarters from 1979 to 1981. On appeal, Thompson admits that he sold 956,-212 gallons of the diesel fuel without paying $38,248.48 in excise tax liability. In his testimony, Thompson conceded that 85 to 90 percent of his sales of diesel fuel were taxable. Thompson stated that "[M]y best estimate that [sic] we had a ten to fifteen percent tax exempt business." Thompson also admitted at trial that he failed to file any excise returns stating "I didn't have— have the time or have the inclination to do the excise tax returns." In 1982, Thompson's accountant acknowledged that a total tax deficiency of $36,000 to $38,000 was "at least close." Since the government proved to the satisfaction of the trial court that Thompson sold 956,212 gallons of diesel fuel over the ten quarter period as charged in the indictment without paying the required excise tax of $38,248.48 and because the government was not required to prove the specific amount of Thompson's tax liability, we hold the evidence presented was sufficient to sustain Thompson's conviction.

### IV

Thompson next contends that the government in cross-examination and in closing argument improperly accused him of committing a crime not charged in the indictment. Specifically, Thompson complains that the prosecution's allegations in closing argument that Thompson had altered his copies of diesel fuel invoices amounted to a charge that Thompson obstructed justice. The prosecutor accused Thompson of erasing the Thompson Oil Company employer identification number which Jones had placed on the Ben-Al Oil Company invoices pursuant to Thompson's directions. In closing argument, the prosecutor stated:

> "You [the jury] decide whether on the basis of all your experience they have been erased. You decide whether someone has made a deliberate effort to take

that number off the face of the yellow copy [customer copy].... Mr. Thompson lied about that. He's the one who erased them. He erased them so he would not have that Federal I.D. number on them, so he could somehow claim that he didn't know anything about what Mr. Jones was talking about."

Argument Vol. 1, p. 19–20. During the trial, on cross-examination, the prosecution inquired as to Thompson's explanation of the alleged erasures. Thompson after denying that he erased the numbers further was unable to explain how the erasures occurred.

In *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), the United States Supreme Court stated "the elements of § 7201 are willfullness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." *Id.* at 351, 85 S.Ct. at 1010 (citations omitted). Thus, in order to sustain a charge of tax evasion against Thompson, the government was required to establish that Thompson took affirmative action, such as erasing the numbers on his copies of the Ben-Al invoices, to evade the federal excise tax he owed and thus that he (Thompson) had acted willfully.

Thompson maintains that, while it is true that the government must show that he committed an affirmative act to evade the excise tax, there was no evidence that he altered his copies of the Ben-Al diesel fuel invoices and, thus, the prosecutor's comment in closing was improper. In *United States v. Fearns*, 501 F.2d 486, 489 (7th Cir.1974), this court stated that "the fundamental rule, known to every lawyer," is that "argument is limited to the facts in evidence." *Id.* at 489. "It is of course true that in closing counsel may make arguments reasonably inferred from the evidence presented." *United States v. Vargas*, 583 F.2d 380, 385 (7th Cir.1978). "Although inflammatory argument may be grounds for reversal, the government should not be restricted to a sterile recitation of uncontroverted facts." *United*

States v. Scott*, 660 F.2d 1145, 1177 (7th Cir.1981). "Unflattering characterizations of the defendant will not provide a reversal when such descriptions are supported by evidence." *United States v. Keane*, 522 F.2d 534, 560 (7th Cir.1975). *See also United States v. Windom*, 510 F.2d 989, 994 (5th Cir.1975).

The government disagreed with Thompson's contention that he did not erase the number and asserted that its allegation during the closing argument that Thompson altered the invoices was proper comment on the evidence. Moreover, the government maintains that it introduced this evidence to prove that Thompson took affirmative action to evade the excise tax. Ben Jones testified that Thompson told him to put the Thompson Oil Company employer identification number on his invoices and further that the I.D. number entitled Thompson to make tax-free purchases of diesel fuel. Jones also testified that he prepared his sales invoices from a common business form which simultaneously produced a yellow customer carbon copy. After Jones inscribed the Thompson Oil Company employer identification number on the invoices, he retained a copy of the invoice for his records and gave a copy to Thompson. The evidence revealed that Thompson maintained exclusive possession of his copies of Jones' invoices up until such time as he relinquished custody of them to the I.R.S. Jones' copies of the invoices introduced in evidence reflected the Thompson Oil Company employer identification number while Thompson's copies of the same invoices reflected that the I.D. numbers had been removed (erased) therefrom. We hold that the defendant's allegations that the government was guilty of improper argument are without merit and that the government's inquiries on cross-examination as well as its comments in closing argument were proper. The government's introduction of circumstantial evidence to establish that Thompson altered his copies of Jones' invoices was proper as the government was required to demonstrate an affirmative act on the part of Thompson

to evade the excise tax. Furthermore it is evident from a review of the record that the prosecution restricted its comments in its closing statement to the evidence presented at trial.

### V

■ Thompson next maintains that the government improperly shifted the burden of proof to Thompson to prove his innocence. Thompson bases his argument on two sections of the record, the government's cross-examination of him and the government's closing argument. During cross-examination, the prosecution inquired as to the amount of tax exempt sales Thompson made. The cross-examination proceeded as follows:

"THOMPSON: Well, we didn't keep track of who was exempt.

GOVERNMENT: You kept absolutely no records, as you told the jury, of who was exempt, correct?

A. I didn't—didn't think at that time I would be sitting her trying to explain who was exempt.

Q. Well, you didn't think at that time you were to entitled to avoid Federal excise tax because you were selling exempt sales, correct?

A. We sold a lot of exempt sales, yes. . . .

Q. Without the benefit of the records—and I know that it's a long time ago—tell the jury how many of those gallons were exempt sales?

A. I'd have no way of knowing.

Q. Well, give them your best guess.

A. I—I—

MR. ROSENBERG: I will object to that. It's not his burden. It's the Government's burden to prove they're taxable.

THE COURT: This· is cross.

I understand your position, Mr. Rosenberg, and I'm denying your motion."

Thompson in his defense testified on direct examination that he made many tax exempt sales. The prosecution was attempting to prove that Thompson in fact made few tax exempt diesel fuel sales. "If a criminal defendant elects to testify in his own behalf, he may be cross-examined and his testimony impeached to the same extent as any other witness." *United States v. Kovic,* 684 F.2d 512, 515 (7th Cir.1982). "He has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination." *Brown v. United States,* 356 U.S. 148, 155, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958), *quoting Fitzpatrick v. United States,* 178 U.S. 304, 315, 20 S.Ct. 944, 949, 44 L.Ed. 1078 (1900). We hold that the government's cross-examination was proper since the government sought to counter Thompson's defense that he made many tax exempt sales of diesel fuel.

■ Thompson also argues that the prosecution shifted the burden of proof because it commented on the fact that Thompson had no proof that he made tax exempt fuel sales since Thompson failed to keep any records. In closing the government stated:

"A few comments about tax due and owing. And I get dizzy thinking about these exemptions. It would have been nice, it would have been wonderful for both parties if we had those records of exempt sales. It would have been wonderful. It would have helped the jury decide exactly how much was exempt and wasn't. But, you know why there were no records for exempt sales? Mr. Thompson told you. He didn't make any records. He didn't keep any records. What did he keep? He kept the money. He kept the money.

Those people, who by Congress' decision are supposed to have a special benefit under the law, that aren't supposed to have to pay the same taxes as other people do, got charged the very same pump price. Where are the refund checks to these people? They're not there. Mr. Thompson cheated them, and you can look at that fact in deciding whether he cheated the IRS. One and the same for him.

Exemptions don't count when you are at my pumps, but they do when I have to

figure out an explanation for the jury. All of a sudden I am finding every loophole in the world. It's improper. It's criminal."

As stated previously, "in closing counsel may make arguments reasonably inferred from the evidence presented." *United States v. Vargas*, 583 F.2d 380, 385 (7th Cir.1978). In the present case, the prosecution argued that it made little difference in determining Thompson's guilt or innocence whether Thompson made some tax exempt diesel fuel sales. We hold that the government's comments in closing were proper since the government presented evidence that Thompson intended to evade the excise tax and, thus, did not keep records in order to conceal his criminal activity.

## VI

█ Thompson finally contends that the trial court erred in denying his motion *in limine* and allowing the government to use his prior convictions for violation of the Illinois excise tax laws to impeach his testimony on cross-examination. Thompson argues that the district court erred because it allowed the prosecution to use these prior convictions to impeach his testimony despite the fact that more than ten years had elapsed between the date of Thompson's conviction on state tax evasion charges and his trial in the present case. Federal Rule of Evidence 609(b) states:

> (b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction *or of the release of the witness from the confinement imposed for that conviction, whichever is the later date,* unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a

fair opportunity to contest the use of such evidence.

F.Rule Evid. 609(b) (emphasis added). Thompson's last day in confinement for his state tax fraud convictions was on February 22, 1976. The trial in the present case began on September 30, 1985, within the ten-year limitation for the admission of evidence of previous convictions provided in Federal Rule of Evidence 609(b). Thompson claims that the trial court's interpretation of rule 609(b) is "hypertechnical" and thus improper, but Thompson cites no authority for his position. We hold that the trial court's application of rule 609(b) in this case was proper as Thompson's trial began within ten years of his release from confinement for his state tax fraud convictions.

## VII

We hold that the government proved beyond a reasonable doubt that Thompson was guilty of tax evasion, that the government did not improperly accuse Thompson of a crime not charged in his indictment, and that the prosecution did not shift the burden of proof to the defendant Thompson to prove his innocence. Further the trial court's ruling in allowing the government to inquire into Thompson's previous convictions for tax evasion in order to impeach his testimony was proper under Federal Rule of Evidence 609(b) because Thompson's trial began within ten years of his release from confinement for his state tax fraud convictions. We affirm.