**UNITED STATES of America, Plaintiff,**

v.

**Kenneth L. NEVIUS, F.J. Vollmer and Company, Inc., Robert W. Vollmer, Dana R. Hales and James B. McCabe, Defendants.**

Cr. No. 91–20057.

United States District Court,
C.D. Illinois,
Danville Division.

March 5, 1992.

Frances C. Hulin, Asst. U.S. Atty., Danville, Ill., for plaintiff.

Thomas Schanzle–Haskins, Springfield, Ill., for Nevius.

Rex Reu, Bloomington, Ill., for F.J. Vollmer & Co., Inc., and Robert W. Vollmer.

J. Steven Beckett, Urbana, Ill., for Hales.

James Valentino, Streamwood, Ill., for McCabe.

## ORDER

BAKER, District Judge.

On November 6, 1991, a grand jury indicted Kenneth L. Nevius, F.J. Vollmer and Co., Inc. (F.J. Vollmer), Robert W. Vollmer, James B. McCabe and Dana R. Hales in an eighteen count indictment stemming from the sales of Steyr–Mannlicher model AUG–SA (Steyr AUG–SA) assault rifles. A grand jury issued a superseding indictment against the defendants on December 4,

1991. Since then all five defendants have moved to dismiss the superseding indictment. (docket # 24, 29, 32) The United States has responded to the motions (docket # 42) and the defendants have requested leave to file reply briefs. The court granted Nevius's motion for leave to file a response (docket # 43) and now grants the motions for leave to file replies by F.J. Vollmer, Robert Vollmer, and Hales (docket # 44) and by McCabe. (docket # 45) For the reasons set forth below, the court denies the defendants' motions to dismiss the superseding indictment.

### Superseding Indictment

Each of the counts in the indictment relates to the defendants' plans and efforts to purchase Steyr AUG–SA assault rifles from Gun South, Inc. (GSI) of Trussville, Alabama, an importer and seller of weapons, and to resell these assault rifles. During the time period covered in the indictment, each defendant held a position which is relevant to their attempts to obtain the assault rifles: Nevius was an officer in the Illinois Army National Guard (Guard); Hales was both an officer in the Guard and a federal firearms licensee; McCabe was a member of the Guard; F.J. Vollmer was a federal firearms licensee; and Robert Vollmer worked for F.J. Vollmer at its gun store. The superseding indictment charges the defendants with conspiracy to defraud the United States under 18 U.S.C. §§ 371 and 372, making false statements to BATF under 18 U.S.C. § 1001, and mail fraud under 18 U.S.C. § 1341 and 1342.

Specifically, count one charges that all the defendants, except Hales, violated 18 U.S.C. § 371 and 372 by conspiring to defraud the United States and the Bureau of Alcohol, Tobacco and Firearms (BATF) by providing false and fraudulent documents to BATF in an effort to obtain the Steyr AUG–SA assault rifles. Counts two

through eight contain separate charges against McCabe, Hales, and Nevius for knowingly and willfully making false statements to the director of BATF that Steyr AUG–SA rifles were being purchased for official use of members of the Guard and not for resale. Under counts nine through thirteen, Hales and Nevius are indicted for mail fraud; the indictment states that Hales and Nevius caused GSI to use the mails to send checks to them as part of a scheme to defraud GSI. Finally, counts fourteen through eighteen charge Nevius, F.J. Vollmer, and Robert Vollmer with mail fraud, alleging that, in executing a scheme to defraud the BATF for the purpose of obtaining Steyr AUG–SA rifles by false and fraudulent pretenses, they submitted orders to GSI through the mail.

### Facts

The Steyr AUG–SA assault rifles which the defendants sought to obtain have been the subject of actions by the Secretary of the Treasury, the BATF, and the federal courts. In making the false statements charged in the indictment, the defendants were attempting to avoid restrictions on the importation and sale of these rifles resulting from a ban by the Secretary of the Treasury and from litigation in the Northern District of Alabama. The restrictions on Steyr AUG–SA assault rifles originated on March 14, 1989, when the Secretary of the Treasury Nicholas Brady imposed a temporary ban on the importation of several makes of semiautomatic assault weapons, including the Steyr AUG–SA rifles. The Secretary enacted this temporary ban pending a decision whether the weapons continued to be importable under section 925(d)(3) of the Gun Control Act (GCA), 18 U.S.C. § 925(d)(3), which allows the importation of firearms that are "recognized as particularly suitable for ... sporting purposes."[1] On the same day,

---

**1.** Section 922(*l*) of the Gun Control Act makes it unlawful for any person to import firearms into the United States except as provided in section 925(d). Section 922(*l*) states:

Except as provided in section 925(d) of this chapter, it shall be unlawful for any person knowingly to import or bring into the United

States or any possession thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter.

the BATF suspended action on pending applications for the importation of the temporarily banned weapons.

Prior to the ban, the BATF had approved two permits for GSI to import Steyr AUG–SA semiautomatic rifles, and GSI had ordered 800 rifles. Once the BATF imposed the temporary ban, GSI asked BATF whether the ban included imports under previously approved permits. Although the BATF responded to GSI's inquiries by stating that the ban did not apply to firearms purchased under preexisting permits, the Customs Service interdicted GSI's shipment of rifles. The government refused to give custody of the guns to GSI unless GSI posted a bond guaranteeing that it would not resell the guns. *See Gun South, Inc. v. Brady*, 877 F.2d 858, 859–609 (11th Cir. 1989) (for more detailed account of GSI's situation).

On March 30, 1989, GSI brought a suit against the Secretary of the Treasury in the Northern District of Alabama seeking to enjoin the government from interfering with the delivery of firearms imported under permits which BATF approved prior to the suspension. The district court issued a permanent injunction preventing the government from withholding the Steyr AUG–SA rifles from GSI. *Gun South, Inc. v. Brady*, 711 F.Supp. 1054 (N.D.Ala. 1989). According to the district court, the government failed to demonstrate that the Steyr AUG–SA rifles were not particularly suitable for sporting purposes under section 925(d)(3). The court concluded that the rifles were importable under section 925(d)(3) and, therefore, that the Gun Control Act precluded the temporary ban. On appeal, the appellate court reversed the district court's decision, finding that the ban was within the authority of the BATF.

*Gun South, Inc. v. Brady*, 877 F.2d 858, 869 (11th Cir.1989).

After the appellate decision, on October 13, 1989, the Director of the BATF determined that the Steyr AUG–SA assault rifles were not suitable for sporting purposes and, therefore, were not importable under any provision of section 925(d). This decision made the ban on Steyr AUG–SA rifles permanent. On November 9, 1989, the Northern District of Alabama entered a Stipulation and Order (Stipulation) dismissing the *Guns South* case. (*See* docket # 29, exhibit 2) This Stipulation allows GSI to import the Steyr AUG–SA assault rifles under the previously approved permits with certain restrictive conditions. The Stipulation specifically provides that GSI only can take possession of the rifles under the conditions stated in paragraph five of the stipulation or under any other means of lawful importation.

Under the conditions in paragraph five, GSI can transfer or sell the firearms to either: (i) a federal, state, or local law enforcement agency which certifies that the guns will be used in official duties; or (ii) an officer of a federal, state, or local law enforcement agency who certifies that he or she will use the gun in official duties. Individual law enforcement officers' purchase orders must also include a supervisor's certification, stating that the officer is authorized to carry a gun and is purchasing the Steyr AUG–SA for use in official duties. Attached to the Stipulation are sample certification forms and purchase orders for the purchasers to submit to the BATF.

The Stipulation also states that the BATF will either approve the sale or notify GSI that the sale does not comply with "the requirements of 18 U.S.C. § 925(a)(1)

---

18 U.S.C. § 922(*l*). Section 925(d), therefore, supplies the only exceptions under which a private entity can import a firearm for private use. This section includes exceptions for firearms brought into the country for scientific or research purposes, as museum pieces, and for sporting purposes. Section 925(d)(3) specifically provides that the Secretary shall authorize importation of a firearm that:

    is of a type that does not fall within the definition of a firearm as defined in section

5845(a) of the Internal Revenue Code of 1954 and is generally recognized as particularly suitable for or readily adaptable to sporting purposes excluding surplus military firearms, except in any case where the Secretary has not authorized the importation of the firearm pursuant to this paragraph, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled.

18 U.S.C. § 925(d)(3).

and/or the terms or this Stipulation...."
Section 925(a)(1) provides that the prohibitions of the Gun Control Act:

> shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

18 U.S.C. § 925(a)(1). As the government points out in its brief, once the BATF prohibited the importation of Steyr AUG–SA assault rifles under section 925(d)(3), section 925(a)(1) was the only provision under which these rifles could lawfully come into the country.

In the superseding indictment, McCabe, Nevius, and Hales, the officers and members of the Guard, are accused of submitting false certifications to the BATF stating that the Steyr AUG–SA rifles would be used for official purposes and not resold in violation of the Stipulation. The indictment charges that they intended to resell the weapons. F.J. Vollmer and Robert Vollmer allegedly agreed to purchase the rifles from the other defendants and resell them.

### Motions to Dismiss the Superseding Indictment

In their motions to dismiss the superseding indictment, the defendants make two main arguments. First, the defendants argue that the BATF does not have the authority to regulate or restrict the sale of Steyr AUG–SA assault rifles as was done in the Stipulation. As support for this argument, the defendants discuss the legislative intent behind the Gun Control Act and assert that Congress clearly did not intend to give the BATF power to regulate domestic sales of weapons. Because BATF does not have authority to restrict firearms' sales, the defendants continue, the alleged false statements submitted in purchasing Steyr AUG–SA rifles cannot form

the basis of an offense under 18 U.S.C. § 1001.

Section 1001, the federal false statement statute, imposes criminal penalties on who "(1) makes a statement that (2) was false, (3) was material, (4) was made knowingly and willfully, and (5) was made in a matter 'within the jurisdiction of any department or agency of the United States'" *United States v. Petullo,* 709 F.2d 1178, 1180 (7th Cir.1983) (footnotes and citations omitted). BATF's lack of authority to regulate sales of firearms means that statements made in connection with domestic purchases of guns, as in this case, are not within the jurisdiction of the BATF. Therefore, the government cannot charge the defendants with a violation of section 1001 based on the facts in this case. Also, since the BATF does not have the authority to restrict the sale of firearms, violations of the Stipulation cannot form the basis for the other charges in the indictment.

The defendants' second main argument is that, even if the BATF had the authority to regulate the sale of Steyr AUG–SA assault rifles, the attempt to regulate through the Stipulation in the *Guns South* case was invalid. Through the Stipulation, the BATF created rules without following the Administrative Procedure Act (APA) requirements or section 926 of the Gun Control Act. Because the Stipulation is not a properly promulgated rule or regulation, it can only bind the parties to the litigation. The court will discuss each of the defendants' arguments and the government's response.

#### i. BATF's Authority

Because the BATF clearly has the authority to regulate the importation of firearms,[2] the defendants' first argument hinges on a distinction between regulating importation and regulating domestic sales of firearms. The government described the defendants' contentions accurately:

> In a nutshell, all of the defendants argue that once [B]ATF permitted GSI to remove the nonsporting semiautomatic as-

**2.** The Secretary of the Treasury has the power to enforce the provisions of the Gun Control Act. The Secretary has delegated this authority

to the BATF. *Gun South, Inc. v. Brady,* 877 F.2d at 861 & n. 1 (citing 27 C.F.R. § 178.12 (1988)).

sault rifles from Customs custody, the firearms were imported and the import restrictions in section 925(a)(1) and (d) were either satisfied or never applied to these guns. Further, the defendants argue that any subsequent sale by GSI is not within [B]ATF's jurisdiction covering imports or the domestic sales of such firearms. The defendants, therefore, collectively conclude that all of the conspiracy, false statement and mail fraud charges pending against them should be dismissed.

Government's Response at 10–11 (docket # 42). The defendants' distinction is misleading and their literal reading of the Gun Control Act would serve to eviscerate the statute.

Under section 925(a)(1), which authorizes the importation of weapons for the official use of federal, state, and local government entities, the BATF can regulate the first domestic sale of a firearm to ensure that it is imported for official government use. Any other interpretation of this section would permit government officers or departments to obtain weapons under section 925(a)(1) and then resell the firearms in the open market. Such a result would obviate the need for the narrow, specific exceptions to section 922(*l*) found in sections 925(a)(1) and (d). In a situation such as section 925(a)(1) or the Stipulation in this case, where the import regulation allows weapons into the country only for official government use, drawing a distinction between the importation and the first sale is misleading. As part of the importation regulation, the BATF has the authority to ensure that the firearm goes to an officer or department of a government.

Courts which have considered the meaning of section 925(a)(1) also have rejected a literal reading such as the defendants'. In *United States v. Goodman,* 639 F.Supp. 802 (M.D.Pa.1986), *aff'd without opinion,* 800 F.2d 1140 (3d Cir.1986), the defendant arranged for a police department to order restricted weapons under section 925(a)(1) which he, a federal firearms licensee, could pay for and resell. He argued that, if a firearm was shipped to a political subdivision, it did not have to be for the use of

that entity to satisfy section 925(a)(1). *Goodman,* 639 F.Supp. at 810. The court stated:

> This is an absurd legal construction and would completely gut the Act which is intended to severely restrict the importation of foreign firearms.
>
> .    .    .    .    .
>
> We cannot ascribe to Congress the intent to allow firearms dealers to increase their commercial inventory of restricted-import weapons by the simple act of merely placing orders through police departments and having the weapons shipped to that entity which will only act as a conduit in transferring them to the real purchaser.

*Id.* at 808, 810 (footnote omitted).

Similarly, in *United States v. Mastro,* 570 F.Supp. 1388 (E.D.Pa.1983), the defendant, a police chief, ordered weapons under section 925(a)(1) and resold them to officers and private citizens. He argued that all the guns that he purchased were exempt from the Gun Control Act because they were shipped to a police department and that the exemption in section 925(a)(1) applies to the making of false statements in the acquisition of the guns and in the receipt and sale of the guns. *Mastro,* 570 F.Supp. at 1391. The court held that:

> The statute does not purport to exempt the making of false material statements in connection with the sales of firearms shipped to political subdivisions. . . . The Court cannot ascribe to Congress the intent to allow firearms purchasers to lie about their purchases so long as the gun is shipped to a state, agency, or political subdivision and can find no support for such an intent in § 925(a)(1).

*Id.* at 1392; *see United States v. Brooks,* 611 F.2d 614, 617–18 (5th Cir.1980), *rev'd on other grounds, United States v. Henry,* 749 F.2d 203 (5th Cir.1984).

■ Therefore, the defendants' argument that the BATF acted outside of their authority here because the Stipulation regulates the domestic sales of Steyr AUG–SA assault rifles fails. In addition, the court agrees with the government that the Stipu-

lation, although creating a different procedure than section 925(a)(1), is within BATF's authority under this section; BATF, through the Stipulation, ensures that the Steyr AUG–SA assault rifles, which do not fall within a section 925(d) exception, cannot end up in regular commercial channels.

Finally, because the BATF has the authority to regulate the transfer of Steyr AUG–SA assault rifles as it does through the Stipulation, the allegedly false statements were made in a matter within the jurisdiction of an agency of the United States. 18 U.S.C. § 1001; *Petullo*, 709 F.2d at 1180. Courts have held that the term jurisdiction, as used in section 1001, should not be given a narrow or technical meaning. *Bryson v. United States*, 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969); *United States v. Stanford*, 589 F.2d 285, 297 (7th Cir.1978) ("jurisdiction" incorporates Congress' intent that the statute apply whenever false statements would result in perversion of authorized functions of department or agency), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). Instead, the statute covers all matters within the authority of an agency. *United States v. Rodgers*, 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984); *see United States v. Barber*, 881 F.2d 345, 350–51 (7th Cir.1989), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990); *United States v. Brack*, 747 F.2d 1142, 1151 (7th Cir.1984), *cert. denied*, 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339 (1985).

A false statement must also be material to fall within the federal false statement statute. *Petullo*, 709 F.2d at 1180. Under section 1001, "the test for materiality is whether the false statement has a tendency to influence or is capable of influencing a federal agency." *Brack*, 747 F.2d at 1147; *see United States v. Brantley*, 786 F.2d 1322, 1326 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). A false statement that a purchaser intended to use a firearm for official governmental purposes certainly would have a tendency to influence the BATF to allow importation and sale of that firearm. Therefore, the defendants cannot succeed in the motions to dismiss the indictment by arguing that the allegedly false statements were not material.

### ii. Stipulation

In their second main argument, the defendants' assert that the Stipulation amounts to a rule which was not promulgated in accordance with the APA requirements or with section 926 of the Gun Control Act. This argument is puzzling. Courts decide cases, set precedent, and interpret laws and regulations such as the Gun Control Act. Although courts' interpretations of laws often change the actions of an agency, courts do not make rules like an administrative agency. Through the Stipulation, the BATF and GSI agreed upon a procedure allowing GSI to import and sell the Steyr AUG–SA rifles after the Eleventh Circuit Court of Appeals found that the BATF could temporarily suspend the importation of the rifles. The Stipulation resolves a dispute between two parties and provides a way for GSI to obtain a limited number of rifles. In entering the Stipulation, the court was acting in its traditional role and not creating a rule.

In addition, the APA imposes rulemaking requirements on agencies. In section 551(1) of the APA, the term agency is defined as not including Congress or the federal courts. 5 U.S.C. § 551(1)(A) and (B). Federal courts, therefore, are not subject to the provisions of the APA. *See In Re Fidelity Mortgage Investors*, 690 F.2d 35, 38 (2d Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). Section 926 of the Gun Control Act restricts the Secretary of the Treasury's ability to prescribe rules under the Act. 18 U.S.C. § 926. Like the APA, the provisions of section 926 do not apply to a federal court's actions concerning the Gun Control Act.

### iii. Additional Arguments

The defendants make a few additional arguments in support of their motions to dismiss. McCabe asserts that the government's reference throughout the in-

dictment to the firearms involved in this case as assault rifles is misleading and prejudicial. According to McCabe, the Steyr AUG–SA weapons are semiautomatic sporting rifles and not assault rifles. However, the BATF has determined that the Steyr AUG–SA firearms do not fit under the exception for sporting weapons. Absent compelling indications that the BATF's evaluation of the firearms is wrong, the court will defer to the BATF's interpretation, like the Eleventh Circuit Court of Appeals in *Gun South*, 877 F.2d at 864–5; *see Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Based on the BATF's interpretation, the reference to the weapons as assault rifles was not misleading or prejudicial.

■ Nevius argues that counts nine through thirteen are insufficient to charge mail fraud and, therefore, the court should dismiss them. These counts relate to Nevius' and Hale's alleged attempts to defraud GSI through participation in GSI's "Dealer Participation Program." The defendants claim that the indictment fails to allege fraud because it does not state that Hales did not assist in obtaining the weapons as required as part of the "Dealer Participation Program." However, the indictment does state that Nevius and Hales "devised and executed a scheme to defraud" and that the allegations in these counts are part of the scheme to defraud. The court finds that the allegations of a scheme to defraud and obtain money through false and fraudulent pretenses contained in these counts are sufficient to allege mail fraud.

IT IS THEREFORE ORDERED that the motion for leave to file a reply (docket # 44) by F.J. Vollmer, Robert Vollmer, and Dana Hales is GRANTED. James McCabe's motion for leave to file a reply (docket # 45) also is GRANTED.

IT IS FURTHER ORDERED that the defendants motions to dismiss the superseding indictment (docket # 24, 29 and 32) are DENIED.