**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Lonnie D. REED, Defendant–Appellee.**

No. 88–2129.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1989.

Decided May 8, 1989.

Mel S. Johnson, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellant.

Dennis P. Coffey, Coffey, Coffey & Geraghty, Milwaukee, Wis., for defendant-appellee.

Before POSNER, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

The United States appeals the order of the United States District Court for the Eastern District of Wisconsin granting defendant-appellee Lonnie D. Reed's motion for judgment of acquittal and conditionally granting Reed's motion for new trial notwithstanding the jury's finding that Reed was guilty of conspiracy to defraud a federally insured savings and loan institution. We reverse.

## I.

The facts of this case center on the application for and acquisition of a $49,600 home loan by Alice Reed, a/k/a Alice Nickles ("Nickles"), the defendant's wife. On March 23, 1985, Mrs. Reed, using the assumed name Alice Nickles, completed a loan application at Greater Milwaukee Bank in Milwaukee, Wisconsin. In her application Nickles stated that she was unmarried, that she earned a monthly salary of $2,184 in her job as a computer program-

mer at Midwest Enterprise, and that her assets included a $7,000 gift.

In order to confirm some of the information in Nickles' application, Susan Matowitz, vice-president of Greater Milwaukee, mailed a verification of employment form ("VOE") to Midwest Enterprise, Nickles' alleged place of employment. The VOE was returned to the bank signed by Lonnie Reed, the owner of Midwest Enterprise, stating that Alice Nickles had been employed there since 1978, earned $27,072 in 1984 and $28,392 in 1985, and accumulated $4,287.32 in an employee savings plan. This information, along with Nickles' application, was then forwarded for consideration to Republic Savings and Loan in Milwaukee.[1] Thereafter, Republic requested Matowitz to verify Nickles' ability to make a down payment on the loan and cover closing costs. After discussing various possibilities with Matowitz, Nickles provided her with a letter certifying that Lonnie Reed, a friend of Nickles', would give Nickles the $7,000 required for a down payment and closing costs. Upon receipt of this information, Robert Kesselhon of Republic approved Nickles' loan application and sent Nickles a commitment letter stating that closing was scheduled for May 31, 1985, and that down payment in the form of a certified, cashier's or savings and loan check or cash was necessary at the closing.

The May 31 closing was attended by Nickles, Matowitz, Claire Nachazel, a closing attorney for Republic, Karl Dovnik, and Brian Carter, the sellers of the house, and the defendant, who Nickles introduced as her boyfriend, Lonnie Reed. Reed stated that he was attending to assist Nickles with the purchase of the house. Three checks payable to Alice Nickles totalling $9,954.81 were presented to cover the down payment and closing costs.[2] All three were drawn on a Midwest Enterprise account at

1. Republic had an agreement with Greater Milwaukee under which Greater Milwaukee processed loan applications and forwarded them for Republic's consideration. Greater Milwaukee received a fee for each loan application that Republic approved.

2. There is a discrepancy as to who presented the checks to the bank officials at the closing. Su-

san Matowitz testified that she couldn't recall whether Nickles or Reed had presented the checks, but Karl Dovnik stated that Lonnie Reed came to the closing with the checks in his possession. Reed denied either bringing the checks to the closing or presenting them to the bank's attorney during the meeting of the various parties.

Heritage Bank in Milwaukee and signed with the name Lonnie Reed. Because these checks were personal in nature, there was a dispute regarding whether the checks could be accepted because they were not the type of checks specified in the commitment letter—namely, a certified, cashiers' or savings and loan check. According to Karl Dovnik, Reed then presented a deposit slip verifying that there were sufficient funds in the Midwest Enterprise account to cover the three checks. After reviewing the deposit verification slip, counsel for Republic accepted the checks, closed the loan, and Republic executed a mortgage on the house Nickles had purchased.

Republic subsequently discovered that the checks presented at the closing were worthless[3] and foreclosed the mortgage on Nickles' house. Republic conducted a foreclosure investigation revealing that Nickles was on probation for check forgery and turned the matter over to the Federal Bureau of Investigation's Milwaukee office.

On November 3, 1986, FBI Special Agent Joanne Cunningham interviewed Nickles at the office of Nickles' probation officer. After Agent Cunningham read Nickles her *Miranda* rights, Nickles signed a waiver of rights form with the name Alice Reed and discussed with Agent Cunningham the details of the Republic loan transaction. At the conclusion of her interview with Nickles, Agent Cunningham advised defendant Reed of his rights; he in turn signed a waiver of rights form and stated during the question and answer session that he owned Midwest Enterprise, a plumbing business, and that he and Nickles had been married since 1979.

Regarding his involvement in the Republic loan transaction, Reed stated that he was not present when Nickles completed the loan application, but admitted that he had given his wife the necessary information to fill out the form. He also stated that Nickles typed out the VOE with information he had provided and that she had signed his name to the form at his direction. Similarly, he admitted to giving Nickles the information needed to complete the gift letter,[4] again instructing her to sign his name thereon. Reed admitted that these documents contained numerous falsehoods, including Nickles' name, marital status, occupation and yearly income. His explanation for the worthless Midwest Enterprise checks presented at closing was much the same as that given for the other false documents—they were from his business, and he told his wife to fill them out and sign his name to them.

Reed and Nickles were indicted on June 23, 1987, on a conspiracy count, two counts of making false statements, and one count of executing a scheme to obtain money from a federally insured financial institution. The latter three counts were also charged as overt acts in furtherance of the alleged conspiracy. The actions against Reed and Nickles were severed, and Reed's trial commenced on February 1, 1988.

During the course of the two-day jury trial, defendant Reed stated that he was only vaguely aware that his wife was attempting to purchase the home where they and their children were living. He admit-

---

**3.** The three checks presented at closing were drawn on a Midwest Enterprise account at Heritage Bank in Milwaukee. The account, which listed Lonnie Reed as the only authorized signer, never had a balance of more than $100.00 and was often overdrawn. On May 31, 1985, two checks made payable to Lonnie Reed and totalling $9,300.00 were deposited into the account. Heritage credited the checks to the Midwest Enterprise account. The account, which was at that time overdrawn, thereafter showed a balance of $9,059.07. The checks deposited into the Midwest Enterprise account were dated May 31, 1985, and drawn on Alice Nickles' account at North Shore Savings and Loan in Milwaukee. Nickles' account at North Shore, however, had

been closed since May 15, 1985, because it was overdrawn by $63.15. Upon discovering the status of Nickles' account at North Shore, Heritage decreased the balance of the Midwest Enterprise account by $9,304.00 (the amount of the two worthless North Shore checks plus a $4.00 return fee), which resulted in the account being overdrawn by $244.93. Heritage Bank subsequently dishonored the checks presented at the real estate closing and, on July 19, 1985, closed the Midwest Enterprise account.

**4.** The term "gift letter" refers to a letter certifying that one individual will give an asset (usually money) to a second individual.

ted that the information in the various loan documents contained falsehoods regarding his wife's name, marital status, employment, income and assets, but at trial denied providing his wife with the information necessary to complete the documents. He also admitted going to the real estate closing with her, but denied presenting the checks or deposit slip to the bank officials. Although the defendant acknowledged at trial that he had informed Agent Cunningham that he had assisted his wife in completing the various documents and checks, presented the worthless checks to the bank officials, and stated at the closing he was assisting Nickles with the home purchase, he asserted that he only made this statement to assist his wife, who was on probation and in jeopardy of going to jail.

At the close of all the evidence, Reed's attorney filed an oral motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29(a). The district judge reserved judgment on the motion and submitted the case to the jury. On February 4, 1988, the jury returned a verdict convicting Reed on the conspiracy count, but acquitting him on the remaining counts. Subsequently, defense counsel renewed his motion for judgment of acquittal on the conspiracy count. The district judge queried defense counsel regarding the appropriateness of a new trial. Reed's attorney then stated that as an alternative to his Rule 29 motion, he would move for a new trial pursuant to Fed.R. Crim.P. 33. On April 29, 1988, the district court granted the defendant's motion for judgment of acquittal on the conspiracy count. The court found:

> "By finding Lonnie Reed not guilty on each of the substantive counts the jury indicated quite emphatically that reasonable doubt existed as to Reed's guilt on those charges. It follows, therefore, that reasonable doubt had to exist as to whether or not any of the overt acts alleged to have been committed in furtherance of the conspiracy had been committed."

The court also stated that had it not granted the defendant's motion for judgment of acquittal, it would have granted his motion for new trial. The government filed a motion for reconsideration of the district court's order, which the district court denied on May 17, 1988.

The United States filed this appeal on June 16, 1988, alleging that the district court erred in granting the defendant's motion for judgment of acquittal, based on the court's perception that the jury's guilty verdict on the conspiracy count and acquittal on the substantive counts were inconsistent. The government also contends that the district court abused its discretion in conditionally granting the defendant's motion for new trial.

## II.

■ The government initially contends that the district court erred in granting the defendant's motion for judgment of acquittal based on its belief that the jury's verdicts were inconsistent. Although the defendant argues that in granting the Rule 29 motion, the trial judge did not rely solely on the inconsistent verdicts, it is clear from the district court's order that the grant of the defendant's motion was based in large part on the trial judge's finding that Reed's conviction on the conspiracy count was inconsistent with the jury's verdict of acquittal on the substantive counts.

The district judge's finding is insufficient to justify overturning the jury's verdict, because "[i]t is well settled ... that '[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.'" *United States v. Abayomi*, 820 F.2d 902, 907 (7th Cir.1987) (quoting *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)). "The policy consideration underlying this rule is that a jury may acquit on some counts and convict on others not because they are unconvinced of guilt, but because of compassion or compromise." *United States v. Isaksson*, 744 F.2d 574, 579 (7th Cir.1984). Thus, it is quite "possible that the jury, convinced of guilt, properly reached its conclusion on the [conspiracy count], and then through mistake, compromise or lenity, arrived at an inconsistent conclusion" on the substantive

counts also charged as overt acts in furtherance of the conspiracy. *United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461, 468 (1984); *United States v. Torres*, 809 F.2d 429, 432 (7th Cir.1987).

We hold that it was error for the district court to grant the defendant's motion for judgment of acquittal based on his perception that there were inconsistencies in the jury's verdict. According to *Abayomi*, consistency in the verdict is not required. 820 F.2d at 907. Thus, the trial court's finding that there were inconsistencies in the jury's verdict was an improper basis for granting the defendant's motion for judgment of acquittal. As the Supreme Court stated in *Powell*, "[S]uch inconsistencies often are a product of jury lenity." 469 U.S. at 65, 105 S.Ct. at 477, 83 L.Ed.2d at 469.

The defendant argues, however, that the district court's grant of his Rule 29 motion should not be reversed because it was not based solely on the inconsistency in the jury verdicts; rather, the court's ruling was based on its belief that there was insufficient evidence to convict Reed on the conspiracy charge. In reviewing a ruling on a motion for judgment of acquittal based on a challenge to the sufficiency of the evidence,

> "[T]he test that the court must use is whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government ... bear[ing] in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.'"

*United States v. Marquardt*, 786 F.2d 771, 780 (7th Cir.1986) (citations omitted). "'This review should be independent of the jury's determination that evidence on another count was insufficient.'" *Torres*, 809 F.2d at 432 (quoting *Powell*, 469 U.S. at 67, 105 S.Ct. at 478, 83 L.Ed.2d at 470).

The jury convicted Reed of conspiracy to defraud a federally insured financial institution in violation of 18 U.S.C. § 371. "This court often has defined a conspiracy as 'a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.'" *United States v. DeCorte*, 851 F.2d 948, 953 (7th Cir.1988) (quoting *United States v. Whaley*, 830 F.2d 1469, 1473 (7th Cir.1987)). "The gist of a conspiracy is an *agreement* among the conspirators to commit an offense, attended by an act of *one* or more of them to effect the object of the conspiracy." *United States v. Bruun*, 809 F.2d 397, 405 (7th Cir.1987) (emphasis added). "By its very nature, a conspiracy 'is conceived and carried out clandestinely, and direct evidence of the crime is rarely available. Thus, circumstantial evidence from which the jury could reasonably infer the existence of an agreement is permissible.'" *United States v. Nesbitt*, 852 F.2d 1502, 1510 (7th Cir.1988) (quoting *United States v. Mayo*, 721 F.2d 1084, 1088 (7th Cir.1983)). "Not only is the use of circumstantial evidence permissible, but circumstantial evidence may be the *sole support* for a conviction." *United States v. Vega*, 860 F.2d 779, 793–94 (7th Cir.1988) (citations omitted). Although the verdict may not rest "solely on the piling of inference upon inference ..., [t]he view that the prosecution's case must answer *all* questions and remove *all* doubts ... of course, is not the law because that would be impossible; the proof need only satisfy reasonable doubt." *Nesbitt*, 852 F.2d at 1511 (citations omitted). Thus, "[t]he government need not establish that there existed a formal agreement to conspire; circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct may serve as proof." *United States v. Redwine*, 715 F.2d 315, 320 (7th Cir.1983).

Applying these standards to the facts of this case, there is little question that there was relevant evidence from which the jury could and did find Reed guilty beyond a reasonable doubt of conspiring with his wife to defraud Republic Savings and Loan. The government intro-

duced the testimony of one of the sellers of the home Nickles attempted to purchase, Karl Dovnik, who stated that Reed and Nickles attended the real estate closing together, that Nickles introduced Reed as her boyfriend, and that Reed, who referred to his wife as "Miss Nickles" and stated that he was assisting her in the purchase of the house, produced the checks to cover the closing costs, as well as the deposit verification slip. Furthermore, Reed admitted at trial that he attended the closing with his wife and that he knew from the activities and conversations occurring at that time that his wife was attempting to purchase the house although he was well aware that she had neither a job nor assets to make such a purchase. Moreover, FBI Agent Joanne Cunningham testified that Reed admitted to her that he had assisted his wife in completing the various loan documents and preparing the worthless checks presented to cover the cost of closing and that he had allowed his wife to sign his name where necessary, e.g., on the VOE and the Midwest Enterprise checks.

It is firmly established that "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *Accord Vega,* 860 F.2d at 793; *Nesbitt,* 852 F.2d at 1509. Under this standard, we are convinced that the jury's conclusion that the defendant knowingly agreed to his wife's scheme to obtain a loan from Republic under false pretenses was supported in the trial record. Reed attempted at trial to recant his admission to Agent Cunningham by testifying that he lied in order to protect his wife and denied assisting his wife in the preparation of the loan documents and closing checks. Nonetheless, the jury was free

to reject, and in fact did reject, Reed's uncorroborated, self-serving statement and chose to believe the unwavering and unimpeached testimony of Dovnik and Cunningham.

Once the jury concluded that Reed had agreed to his wife's scheme and thus that a conspiracy existed between Reed and his wife, the jury determined that overt acts in furtherance of the conspiracy had been committed. In light of Reed's testimony at trial that his wife had committed all of the acts enumerated as overt acts in the conspiracy count, this finding was clearly supported in the record. The fact that the jury acquitted Reed of the substantive offenses in the indictment, also listed as overt acts, does nothing to detract from their conviction of Reed on the conspiracy charge. It is well settled that the overt acts committed by co-conspirators in furtherance of the conspiracy are attributable to the other members of the conspiracy. *See, e.g., United States v. Spudic,* 795 F.2d 1334, 1337 (7th Cir.1986).

In sum, we are satisfied that there was overwhelming evidence from which the jury, exercising well-reasoned judgment, could find Reed guilty of conspiracy beyond a reasonable doubt. After reviewing the evidence in the light most favorable to the government, as *Jackson v. Virginia, supra,* requires, we are convinced that the defendant knowingly agreed to conspire with his wife to defraud Republic Savings and Loan and that at least one act was committed by Reed or his wife in furtherance of their conspiratorial agreement. Accordingly, we hold that it was error for the trial judge to grant the defendant's motion for judgment of acquittal.

### III.

The government also argues that the trial court's conditional grant of Reed's motion for new trial was an abuse of discretion.[5] Before considering the merits of this

---

5. Rule 29(d) of the Federal Rules of Criminal Procedure provides in pertinent part:

"If a motion for judgment of acquittal after verdict of guilty under this Rule is granted, the court shall also determine whether any

motion for a new trial should be granted if the judgment of acquittal is thereafter vacated or reversed, specifying the grounds for such determination. If the motion for a new trial is granted conditionally, the order thereon

issue, however, we address the defendant's contention that the government's appeal of the district court's order conditionally granting Reed's motion for new trial violates the double jeopardy clause of the United States Constitution.

■ "It has long been the rule that the government cannot appeal in a criminal case without express congressional authorization." *United States v. Blasco,* 581 F.2d 681, 683 (7th Cir.1978). Congress authorized governmental appeals of post-conviction new trial orders in the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, § 1206, 98 Stat. 1976, 2153 (1984) (amending 18 U.S.C. § 3731). In considering this legislation, Congress explicitly considered whether a governmental appeal of a post-conviction new trial order would violate the double jeopardy clause:

> "Providing for a post-conviction right of appeal from a district court order awarding a new trial would violate no constitutional guarantee. In *United States v. Wilson,* [420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975),] the Supreme Court held that 'where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended,' [ ] and thus, 'when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the government may appeal from that ruling without running afoul of the Double Jeopardy Clause.' [*Id.* at 344, 95 S.Ct. at 1022.] Therefore, it is clear that to authorize appeal of a post-conviction new trial order is constitutionally permissible, since the successful government appeal will merely result, as in *Wilson,* in the reinstatement of the conviction, not a second trial."

S.Rep. No. 225, 98th Cong., 1st Sess. 405 (1983) (footnotes omitted). In light of our holding, *supra,* that the district court erroneously granted Reed's motion for judgment of acquittal, a successful government appeal of the district court's conditional grant of a new trial will result only in the reinstatement of the jury's verdict finding Reed guilty of conspiracy. Thus, we conclude that the double jeopardy clause poses no bar to the government's appeal of the district court's conditional grant of Reed's new trial motion.

■ The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court. *United States v. Nero,* 733 F.2d 1197, 1202 (7th Cir.1984). In reviewing the trial court's disposition of a motion for new trial, "[t]he appellate court properly defers to the view of the trial court unless there has been an error as a matter of law or a clear and manifest abuse of discretion." *United States v. Davis,* 604 F.2d 474, 484 (7th Cir.1979) (citation omitted).

> "While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.... The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.... Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'"

*United States v. Martinez,* 763 F.2d 1297, 1312–13 (11th Cir.1985) (citations omitted).

■ We are of the opinion that when the evidence presented in this case is analyzed in light of these standards, it is clear that the defendant is not entitled to a new trial. The government presented overwhelming evidence that Reed knew of his wife's plan to fraudulently obtain through the presentation of false documents a loan from Republic in order to purchase a house, agreed to assist and, in fact, did assist her in carrying out the plan.

To establish Reed's knowledge of, agreement to, and participation in his wife's conspiratorial plan to defraud Republic, the

does not affect the finality of the judgment. If the motion for a new trial has been granted conditionally and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered...."

government introduced Karl Dovnik's testimony concerning the defendant's actions at the closing—namely, referring to his wife as "Miss Nickles" and presenting the worthless Midwest Enterprise checks and deposit verification slip—and Reed's admission to FBI Agent Joanne Cunningham that he provided his wife with the information to complete the documents and checks and consented to her signing his name thereon. Neither witness wavered in their account of their conversations with Reed. Furthermore, the defendant not only failed to impeach the testimony of Dovnik and Cunningham, but also failed to raise an inference, much less establish, that the credibility of either witness was questionable. Reed, in his self-serving testimony, vigorously denied that he had assisted his wife in any way in her plan to defraud Republic. He even went so far as to admit that he was lying when he admitted to Agent Cunningham that he had aided his wife in completing the various loan forms, thus calling his own credibility into question. This, however, was simply a conflict in testimony where the jury was called upon to assess the credibility of the respective witnesses—not a situation where the government presented a case based on the testimony of impeached witnesses and compound inferences. It certainly was not an instance where the defense presented witnesses whose testimony was unimpeached and unwavering. As such, there was no reason for the court to second-guess the jury's credibility determinations.

Simply stated, this is not one of those "exceptional cases" where the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand. The government's case against Reed consisted of an overwhelming amount of unimpeached testimony and evidence establishing his knowledge of and participation in the plan to obtain money from Republic through the use of false statements and false documents. Thus, we hold that the district court's conditional grant of Reed's motion for new trial was a clear and manifest abuse of discretion.

## IV.

In view of our holdings that the district court erred in granting the defendant's motion for judgment of acquittal and abused its discretion in conditionally granting Reed's motion for new trial, we reverse the judgment of the district court and remand to the trial court with instructions to reinstate the jury's guilty verdict on the conspiracy count and proceed to sentencing.

JUDGMENT REVERSED; CAUSE REMANDED.