**UNITED STATES of America, Plaintiff,**

v.

**James B. McCABE, et al., Defendants.**

**No. 91–CR–20057.**

United States District Court, C.D. Illinois, Danville Division.

May 12, 1992.

As Corrected May 13, 1992.

Frances C. Hulin, Asst. U.S. Atty., Danville, Ill., for plaintiff.

Thomas Schangle–Haskins, Springfield, Ill., for Nevius.

Rex Reu, Bloomington, Ill., for F.J. Vollmer & Co., Inc. and Robert W. Vollmer.

J. Steven Beckett, Urbana, Ill., for Hales.

James Valentino, Streamwood, Ill., for McCabe.

## ORDER ON F.J. VOLLMER AND COMPANY, INC. POST TRIAL MOTIONS

BAKER, District Judge.

A jury found the defendant, F.J. Vollmer and Co. (F.J. Vollmer), guilty of one count of conspiracy and three counts of mail fraud. F.J. Vollmer has moved for a judgment of acquittal (docket # 83) or, in the alternative, for a new trial on all four counts. (docket # 85) For the reasons set forth below, both motions are denied.

### BACKGROUND

The indictment in this case charged five defendants, Dana Hales, Kenneth Nevius, James B. McCabe, Robert Vollmer, and F.J. Vollmer: with conspiracy to defraud the United States under 18 U.S.C. §§ 371 and 2; making false statements to the Bureau of Alcohol, Tobacco and Firearms (BATF) under 18 U.S.C. § 1001; and mail fraud under 18 U.S.C. §§ 1341 and 2. Each of the counts in the indictment related to the defendants' plans and efforts to purchase Steyr AUG–SA assault rifles from Gun South, Inc. (GSI) of Trussville, Alabama, an importer and seller of weapons, and to resell the rifles. Count one, on which the jury found F.J. Vollmer guilty, specifically charged that all the defendants, except Hales, violated 18 U.S.C. §§ 371 and 372 by conspiring to defraud the United States

and the BATF by providing false and fraudulent documents to BATF in an effort to obtain the Steyr AUG–SA assault rifles. Counts sixteen, seventeen, and eighteen, on which the jury also convicted F.J. Vollmer, charged Nevius, F.J. Vollmer, and Robert Vollmer with mail fraud, alleging that, in executing a scheme to defraud the BATF for the purpose of obtaining Steyr AUG–SA rifles by false and fraudulent pretenses, they submitted orders to GSI through the mail.[1]

One defendant, Nevius, entered a conditional plea of guilty prior to the trial. After an eight-day trial, the jury acquitted Hales on all counts and convicted McCabe[2] on one count. The jury found Robert Vollmer, an employee of F.J. Vollmer, not guilty on all counts. The jury's decision to acquit Robert Vollmer, who acted as an agent for F.J. Vollmer in the rifle transactions, while finding the corporation guilty, forms the basis for F.J. Vollmer's motions.

## DISCUSSION

The jury instructions in this case stated:

A corporation, of course, cannot act for itself. It may only act through its agents. Agents are the officers, directors, employees, or other persons who may be authorized to act for the corporation. A corporation is legally responsible for those acts or omissions of its agents made or performed within the scope of their employment.

To find a corporate defendant guilty, you must find beyond a reasonable doubt that all the essential elements of the offense, as set forth in these instructions, are present as to the corporation in the form of acts or omissions of its agents which were performed within the scope of their employment.

Jury Instructions at 24. (docket # 76) F.J. Vollmer argues that, based on this jury instruction, Robert Vollmer's acquittal is inconsistent with its conviction and must raise a reasonable doubt as to its guilt.

According to F.J. Vollmer, the only evidence supporting its conviction for conspiracy and mail fraud involves the actions of its agent, Robert Vollmer. Therefore, if the evidence against Robert Vollmer is insufficient to support a finding of guilt, the evidence against the corporation is also insufficient.

F.J. Vollmer relies on the inconsistency of the verdicts to support its sufficiency of the evidence claim. In essence, F.J. Vollmer contends that the jury's acquittal of Robert Vollmer leads to the conclusion that the jury could not find beyond a reasonable doubt all the elements of the offense required to convict the corporation. Even if the court characterized the verdicts as inconsistent, the issue here is whether an inconsistent verdict requires a reversal of the convictions as F.J. Vollmer argues.

### Inconsistent Verdicts

In 1932, the Supreme Court held that "[c]onsistency in the verdict is not necessary. Each indictment is regarded as if it was a separate indictment." *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). Following *Dunn*, the Supreme Court and the Seventh Circuit have found that inconsistency in the jury's verdicts alone is not enough to overturn a conviction. *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48 (1943); *United States v. Reed*, 875 F.2d 107, 110 (7th Cir.1989); *United States v. Abayomi*, 820 F.2d 902, 907 (7th Cir.), *cert. denied*, 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). Moreover, a jury's motive in returning inconsistent verdicts is not relevant when determining whether a verdict should stand. "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." *Dunn*, 284 U.S. at 394, 52 S.Ct. at 191. "Whether the jury's verdict was the result of carelessness or compromise or

---

1. For a detailed description of the facts underlying the indictment, see the court's order on the motions to dismiss the indictment, entered March 5, 1992, 792 F.Supp. 609. (docket # 46)

2. McCabe also filed a motions for judgment of acquittal or for a new trial. The court addressed these motions in a separate order.

a belief that the responsible individual should suffer the penalty ... is immaterial. Juries may indulge in precisely such motives or vagaries." *Dotterweich,* 320 U.S. at 279, 64 S.Ct. at 135 (citing *Dunn,* 284 U.S. 390, 52 S.Ct. at 189)).

■ "The policy consideration underlying this rule is that a jury may acquit on some counts and convict on others not because they are unconvinced of guilt, but because of compassion or compromise." *United States v. Isaksson,* 744 F.2d 574, 579 (7th Cir.1984). Indeed, the verdicts may reflect the jury's exercise of their power of lenity and not the government's presentation of insufficient evidence. *See United States v. Powell,* 469 U.S. 57, 65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984); *United States v. Torres,* 809 F.2d 429, 432 (7th Cir.1987).[3] Therefore, it is not clear whether inconsistent verdicts are a windfall to the government or to the defendant. *Powell,* 469 U.S. at 65, 105 S.Ct. at 476. The fact that the inconsistency may be the result of jury lenity, benefitting the defendant, and that the government may not seek review to correct the error, militates against reviewing inconsistent verdicts at the defendant's request. *Id.* at 65–66, 105 S.Ct. at 476–77; *see also Harris v. Rivera,* 454 U.S. 339, 345–48, 102 S.Ct. 460, 464–66, 70 L.Ed.2d 530 (1981); *Standefer v. United States,* 447 U.S. 10, 22, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980).

■ In its motions, F.J. Vollmer concedes that inconsistency in the verdicts alone is not enough to overturn a conviction. F.J. Vollmer Reply Memo at 10. However, F.J. Vollmer argues that several points distinguish this case from earlier cases evaluating inconsistent verdicts. The Supreme Court and the Seventh Circuit have rejected F.J. Vollmer's position.

First, according to F.J. Vollmer, the jury's acquittal of Robert Vollmer, the corporate agent, compels the conclusion that the evidence against the corporation also was insufficient. *Id.* at 2, 11. In *Powell,* the defendant argued that an acquittal on a predicate offense required a finding of insufficient evidence on a compound felony count. This argument, the Court stated, "simply misunderstands the nature of the inconsistent verdict problem.... [T]he argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury 'really meant.' This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent." *Powell,* 469 U.S. at 68, 105 S.Ct. at 478; *see United States v. Brown,* 934 F.2d 886, 889 (7th Cir.1991) (court rejected defendant's argument that his acquittal on counts charging possession of drugs leads to conclusion that there was insufficient evidence to support conspiracy count). Similarly, F.J. Vollmer's argument assumes that the jury meant that the evidence against Robert Vollmer was insufficient and that the acquittal was not the result of compromise or lenity.

■ Second, the defendant contends that, because of the jury instructions in this case, the acquittal of Robert Vollmer "must raise reasonable doubt as to the guilt of the corporate principal." F.J. Vollmer Reply Memo at 11. The *Powell* Court also discussed this argument. The Court explained that the problem of inconsistent verdicts—that the court and the parties cannot assume that the acquittal was what the jury meant—"is not altered when the trial judge instructs the jury that it must find the defendant guilty of the predicate offense to convict on the compound offense." *Powell,* 469 U.S. at 68, 105 S.Ct. at 478. Inconsistent verdicts, delivered after such an instruction, are "still likely to be the result of mistake, or lenity, and therefore [are] subject to the *Dunn* rationale." *Id.* In any event, inconsistent verdicts usually indicate that the jury did not follow the court's instructions. *Id.* at

---

3. As the Court stated in *Dunn:*

"The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the

defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

284 U.S. at 393, 52 S.Ct. at 190 (quoting *Steckler v. United States,* 7 F.2d 59, 60 (2d Cir.1925)).

65, 105 S.Ct. at 476. Therefore, the court cannot rely on the instructions to reveal the meaning of the verdicts.

Finally, F.J. Vollmer tries to distinguish this case on its facts. The defendant asserts that in this case, where the jury acquitted the only agent and convicted the corporation, the acquittal shows the insufficiency of the evidence against the corporation. Specifically, the defendant attempts to distinguish a Seventh Circuit decision upholding jury verdicts which acquitted numerous corporate officers and agents and convicted the corporation. In *United States v. General Motors Corp.*, 121 F.2d 376, 411 (7th Cir.), *cert. denied*, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1984), the court stated that "the acquittal [of the named officers and agents] did not exhaust the list of agents who could have been and were responsible for the acts and policies of the [corporation]." However, the court also noted that:

> we believe that the acquittal of the officers and agents, even if they had been the only persons through whom the corporations could have acted, should not operate without more to set aside the verdict against the corporations. Nor do we attach significance to the argument that the problem of inconsistent verdicts in the instant case presents a different problem than that when the verdicts upon two counts [against the same defendant] are inconsistent.

*Id; see United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 684–85 (5th Cir. 1981) (defendants unsuccessfully argued that court should overturn verdict because every person who could have acted as their agent had been acquitted).

Because the court, even on these facts, will not assume that Robert Vollmer's acquittal is the result of insufficient evidence, the defendant cannot rely on the inconsistency of the verdicts to overturn the conviction. *Torres*, 809 F.2d at 432. Instead, the defendant must focus on whether the evidence at trial could support any rational determination of guilt beyond a reasonable doubt. *Powell*, 469 U.S. at 67, 105 S.Ct. at 477. This review of the sufficiency of the evidence "should be independent of the jury's determination that evidence on another count was insufficient." *Id; Torres*, 809 F.2d at 432.

### Sufficiency of the Evidence

The test for granting a judgment of acquittal based on a challenge to the sufficiency of the evidence is well established. The court has to find that any rational jury viewing all the evidence in the light most favorable to the government could not have reached a verdict of guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir. 1984). When reviewing the evidence, the court must bear "in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.'" *United States v. Beck*, 615 F.2d 441, 448 (7th Cir.1980) (quoting *United States v. Blasco*, 581 F.2d 681, 684 (7th Cir.), *cert. denied*, 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978)); *see Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

The jury convicted F.J. Vollmer of conspiracy to defraud the United States and the BATF by providing false and fraudulent documents to the BATF to obtain Steyr AUG–SA assault rifles for the purpose of resale. "The gist of a conspiracy is an agreement among the conspirators to commit an offense, attended by an act of one or more of them to effect the object of the conspiracy." *United States v. Bruun*, 809 F.2d 397, 405 (7th Cir.1987). The government may rely on circumstantial evidence and reasonable inferences drawn from the evidence as the sole proof of the agreement. *Reed*, 875 F.2d 107, 111 (citations omitted). The overt acts listed in the indictment include F.J. Vollmer's purchases of forty-five assault rifles from Nevius. Proof of the overt acts can be as minimal as proof that only one of the coconspirators committed an act to effect the object of the conspiracy. *See Reed*, 875 F.2d at 111–12.

Using these standards, the government clearly presented relevant evidence

from which a rational jury could conclude beyond a reasonable doubt that F.J. Vollmer conspired with Nevius and McCabe to defraud the United States and the BATF. The government presented evidence that F.J. Vollmer purchased rifles from Nevius, paying him with corporate checks, on numerous occasions between July, 1990 and September, 1991. The government also presented evidence, in the testimony of Nevius and Fred Vollmer, the owner of F.J. Vollmer, concerning the prices that F.J. Vollmer paid to Nevius and F.J. Vollmer's knowledge of how Nevius was obtaining the assault rifles. The videotape of the September 6, 1991 transaction between Nevius and F.J. Vollmer provides evidence from which a jury reasonably could infer that Fred Vollmer and several employees [4] of F.J. Vollmer were aware of the ban on Steyr AUG–SA rifles, understood how Nevius obtained the rifles and agreed to participate in the plan to purchase and resell the rifles.

During the videotaped transaction, Nevius remarked that it was legal to move the rifles. Fred Vollmer responded to this remark in the negative and went on to state that he and Robert Vollmer "were just discussing that" and figured that they did not have a problem. Fred Vollmer also discussed the certifications that Nevius mailed to GSI; he stated that he thought, based on the signed certifications, that the transactions were not a problem. However, he was not sure about the quantities of rifles that they were buying. Later in the conversation, Fred Vollmer said that they all looked at the certifications which the members had to sign and he thought that the government could not arrest Nevius. Fred Vollmer, Robert Vollmer, Jim Diehl and Nevius all discussed what the BATF could do to investigate the purchase of the rifles; in this portion of the conversation, Fred Vollmer even mentioned the court ruling restricting the rifle sales. Fred and Robert Vollmer also told Nevius

that they were shipping the guns out to others right after he left the store. Considering all this evidence under the *Jackson* standard, the trial record supports the jury's conviction of F.J. Vollmer for conspiracy. The evidence also supports F.J. Vollmer's conviction for mail fraud in executing the scheme to defraud the BATF.

### Motion for a New Trial

■ While the decision to grant a new trial rests within the sound discretion of the trial court, the court cannot reweigh the evidence and grant a new trial just because the court disagrees with the jury's assessment of the evidence. *Reed*, 875 F.2d at 113 (7th Cir.1989). "New trials based on the weight of the evidence should be granted only when the evidence is 'heavily against the verdict' ..." *United States v. Colston*, 936 F.2d 312, 316 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991), and allowing the verdict to stand would be a miscarriage of justice. *United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir.1985); *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir.1979). The court concludes that to allow this verdict of guilty on the four counts against F.J. Vollmer to stand would not result in a miscarriage of justice.

As discussed above, the government presented evidence that F.J. Vollmer knowingly participated in the scheme to circumvent the Treasury Regulation on assault rifles. Unlike McCabe, F.J. Vollmer was not an insignificant or incidental player in the scheme. On the contrary, F.J. Vollmer, a gun dealership with a nationwide business, was party to all the transactions involving the seventy assault rifles.[5] Robert Vollmer negotiated each transaction with Nevius and paid him with corporate checks. F.J. Vollmer then went about reselling the rifles in general commerce. This is not an exceptional case where the court should grant the motion for a new trial based on

---

**4.** Robert Vollmer, Jim Diehl, and Jim Vollmer, among others, all make statements on the tape indicating their knowledge of the transactions which form the basis of the conspiracy.

**5.** Some of the transactions involved receivers and not complete rifles, but a receiver is equivalent to a rifle. F.J. Vollmer wanted the receivers because it used them to assemble machine guns, fully automatic weapons.

the weight of the evidence. *See Reed,* 875 F.2d at 113–14 (quoting *Martinez,* 763 F.2d at 1312–13).

Although the jury may have disregarded the court's instructions or acted out of lenity or compassion in acquitting Robert Vollmer, the evidence against F.J. Vollmer supports the jury's decision to convict on all four counts. The court will not speculate about the meaning of the jury's decision to acquit Robert Vollmer and use the results of such speculation to support a grant of a new trial or of a judgment of acquittal. "While symmetry of results may be intellectually satisfying, it is not required." *Standefer,* 447 U.S. at 25, 100 S.Ct. at 2009; *see United States v. West,* No. 90–3551, slip. op. at 7, 962 F.2d 1243, 1247 (7th Cir. April 29, 1992) ("as Holmes said, the life of the law has not been logic").

IT IS THEREFORE ORDERED that the defendant's motion for a judgment of acquittal (docket # 83) is DENIED.

IT IS FURTHER ORDERED that the defendant's motion for a new trial (docket # 85) is DENIED.