32 F.3d 570
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Yousef SULEIMAN and Mahoud Salameh, Defendants-Appellants.
 Nos. 93-2418, 93-2452.
 United States Court of Appeals, Seventh Circuit.
 Argued April 11, 1994.
Decided July 29, 1994.
 
 Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Around 10:40 P.M. on May 14, 1991 there was a fire at Suleiman Food and Liquors, a grocery and liquor store located at 3834 West Chicago Avenue, in Chicago, Illinois. The store was owned by defendants Yousef Suleiman and Mahoud Salameh. They rented the space from the building's owner, Maher Saleh.
 
 
 2
 The defendants were unhappy with their lease arrangement with Saleh. They did not have a written lease, which was an inconvenience to them in conducting their business. At the time Saleh bought the building defendants were operating under a month-to-month lease. When they first met Saleh they asked for a ten year lease, which Saleh was unwilling to give them. When he refused, Saleh claims, defendants threatened to burn the building down. Saleh reported this threat to the police in August of 1990.
 
 
 3
 The defendants' business was not doing well and they had tried to sell the store. Their efforts included asking Saleh to help them find a buyer.
 
 
 4
 The store had been broken into several times. In the pre-dawn hours of the day of the fire there was another break-in. The police caught the people who had entered the store, one of whom was the cousin of the woman who lived in the apartment located over the store. Suleiman told the police that this woman had served as the "lookout" for the break-in.
 
 
 5
 All of the exterior entrances of the store were locked when the firefighters arrived on the night of the fire. There was an interior door between the basement of these premises and the adjacent storefront, which was also owned by Saleh. It is uncertain whether or not this interior door was locked on the night of the fire. Saleh claims that he did not have keys to the store.
 
 
 6
 Two eyewitnesses, Anthony Riley and Perry Shavers, saw the defendants and a third man leaving the building between 10:30 and 11:00 P.M. They then saw defendants lock the front door. Riley and Shavers saw smoke, or smoke and flames, coming from the back of the building.[1] They shouted to the defendants that there was a fire, but the defendants got in a brown and white station wagon and drove away. Riley and Shavers identified Suleiman and Salameh as the persons who got into the station wagon. Suleiman, it was later determined, owned a brown and white station wagon. The defendants had insurance coverage of $60,000 on the contents of their store.
 
 
 7
 Saleh was also present on the evening of the fire, arriving around the time that the firemen did. He was at a nearby store managed by his nephew, when he heard sirens and came over. He notified policemen on the scene about the defendants' threats to burn down the building.
 
 
 8
 Chicago Police Department experts who examined the building after the fire had been struck concluded that it was arson. There was no evidence of forced entry into the building. A federal grand jury indicted the defendants and a third individual, Mahmoud H. Yousef, in a one count indictment charging them with arson, violating Title 18 U.S.C. Secs. 2 and 844(i). At trial a jury returned verdicts of guilty against Suleiman and Salameh and a verdict of not guilty against Yousef.
 
 
 9
 Suleiman was sentenced to 56 months incarceration, followed by three years of supervised release, and ordered to pay restitution. Salameh was sentenced to 51 months incarceration, followed by three years of supervised release, and he was made jointly and severally liable with Suleiman for the restitution payment.
 
 
 10
 On appeal the defendants argue that the district court abused its discretion when (1) it denied their first motion for a new trial, finding that the evidence submitted at trial was sufficient to support the verdict, and (2) when it denied their second motion for a new trial, finding that new evidence of a subsequent fire at the same location did not require a new trial. The motions for a new trial were made under Federal Rule of Criminal Procedure 33.
 
 
 11
 We review for abuse of discretion a denial of a motion for new trial on the basis of insufficient evidence. United States v. Morales, 902 F.2d 604, 605-06 (7th Cir.1990). As we noted in Morales, "the trial judge is in a better position than we to evaluate such a motion--he heard the witnesses and lawyers and watched the jurors as they listened to the evidence...." Id. Therefore "the standard of review is ... a highly deferential one." Id.
 
 
 12
 In United States v. Reed, 875 F.2d 107, 113 (7th Cir.1989) we also noted that the district court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.... The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."[2]
 
 
 13
 Defendants argue that they should have been acquitted because Saleh was more likely to have set the building on fire than they were, because he too had a motive to do so, and they claim that he had an opportunity to do so.
 
 
 14
 Defendants claim that Saleh had fire insurance on the building, and that he wanted them out of the building. They also claim that his presence on the night of the fire was unusual and therefore suspect. They also claim that Saleh could have gotten into their store through the door in the basement.
 
 
 15
 But none of this matters. Defendants had their chance to cross examine Saleh regarding the fire, and to demonstrate that he also had motives and an opportunity to set the fire.
 
 
 16
 Whether or not Saleh had any motive to set the fire, the government demonstrated five possible motives for defendants to have set the fire including, (1) they were angry at Saleh for denying them a long-term lease, (2) the store was not profitable, (3) the defendants had tried to sell the store and failed, (4) the defendants were over-insured, and (5) defendants were angry at the people living in the apartment over the store. Furthermore, the defendants certainly had the opportunity to set the store afire, while it is disputed whether or not Saleh could have entered the building.
 
 
 17
 Defendants also argue that the testimony of Riley and Shavers was not credible. They had the opportunity to cross-examine both men, and apparently the jury found them credible.
 
 
 18
 The government demonstrated that the defendants had motive and opportunity to commit the crime. Whether or not there was some evidence to support some other explanation of the events on the night of the fire, the defendants have failed to meet the standard needed for a new trial under Rule 33. The evidence does not "preponderate heavily against the verdict" nor was it "a miscarriage of justice" to let it stand. To the contrary, there is substantial evidence to support the guilty verdict. What defendants are in essence asking us to do is reassess the credibility of the witnesses and we have repeatedly said we will not do so. United States v. Van Wyhe, 965 F.2d 528, 531 (7th Cir.1992) (We will not reweigh the evidence or judge the credibility of witnesses, and all reasonable inferences must be drawn in favor of the verdict.).
 
 
 19
 The district court did not abuse its discretion when it denied the defendants a new trial on the basis of insufficient evidence.
 
 
 20
 The second motion for a new trial was made on the basis of newly discovered evidence. This new evidence was a second fire in the empty storefront next to where Suleiman Food and Liquors had been located. Defendants argued that this fire was similar to the first fire, and that this indicated that Saleh was the culprit in both cases. They argued that Saleh had access to both stores and a motive for both fires.
 
 
 21
 But there were significant differences between the two fires. In the second fire, someone had pried off the front security gates and had stolen some items from inside. Also, the back door of the store was left open, whereas in defendants case all the doors were locked. The second fire seems to have been set to cover up evidence of a burglary.
 
 
 22
 In United States v. Kamel, 965 F.2d 484, 490 (7th Cir.1992) we noted that "a motion for a new trial based upon previously undiscovered evidence is ordinarily not favored and should be granted only with great caution." In Kamel we reiterated our four part test, which the movant must pass in order to obtain a new trial.
 
 
 23
 [t]he defendant[s] must demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.
 
 
 24
 Id. Defendants herein pass the first two hurdles, because the fire occurred after the trial. They do not succeed in passing the second two.
 
 
 25
 In Kamel we observed that the requirement that newly discovered evidence be material "presupposes, of course, that the proffered new 'evidence' would be admissible at the new trial." Id. at 491. But the evidence regarding the second fire would not be admissible.
 
 
 26
 Defendants argue that Saleh, and not they, set the first fire. They want to admit evidence of a second fire as evidence to support this claim. In other words, they hope to prove that Saleh set the first fire, by introducing evidence that he set the second.
 
 
 27
 Using the evidence of the second fire in this manner runs afoul of Federal Rule of Evidence 404(b).[3] In United States v. Zapata, 871 F.2d 616, 620 (7th Cir.1989) we set forth a four part test to determine whether evidence is admissible pursuant to Rule 404(b). The district court must determine whether
 
 
 28
 (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crimes charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.
 
 
 29
 The evidence of the second fire is not sufficient to support a jury finding that Saleh committed the act. In fact, there is no evidence connecting him to the fire at all. The evidence of the second fire is not admissible under 404(b).
 
 
 30
 Finally, even if the evidence of the second fire was admissible, it does not meet the fourth requirement of the Kamel test, that the evidence "would probably lead to an acquittal in the event of a retrial." The defendants had their chance to argue that Saleh, not they, lit the fire. The additional evidence of the second fire, which was not similar to the first fire, would add little to this argument in light of the evidence against them. Therefore a new trial including this evidence, if it was admissible would not "probably lead to an acquittal."
 
 
 31
 The district court did not abuse its discretion when it denied the motion for a new trial based on the new evidence of a second fire.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 The testimony of Shavers and Riley differs in some details, including whether or not there was any sign of smoke before the men left the building. They differ as to whether flames were visible or only smoke. They also differed regarding whether they had driven or taken the bus to the street corner, where they stood for several hours drinking beer, and whether or not they had left and come back or stayed there continuously
 
 
 [2]
 Defendants claim that United States v. Morales, 902 F.2d 604, 607 (7th Cir.1990), created a new standard for granting a new trial based on weight of the evidence, citing to language in that case which reads "the issue becomes whether the prosecution's hypothesis regarding guilt is substantially more probable than the defendant's theory of innocence." However, this is not a new test, but merely a rephrasing of the test from Reed. We made this clear in our amendment to this same case, United States v. Morales, 910 F.2d 467, 468 (7th Cir.1990), wherein we stated that "we did not intend to state a new test." Rather, we were specifying in our discussion in Morales how the appellant had succeeded in passing the test set forth in Reed
 
 
 [3]
 The rule reads in pertinent part, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...."